UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

PATRICK O'BRIEN and
MARLENE O'BRIEN, his wife

CASE NO.:

Plaintiffs,

vs.

ALFRED O. BONATI, M.D., GULF COAST ORTHOPEDIC CENTER - ALFRED O. BONATI, M.D., P.A., a for-profit corporation; AMERICAN MEDICAL CARE, INC., a for-profit corporation; MEDICAL DEVELOPMENT CORPORATION OF PASCO COUNTY, INC., d/b/a THE BONATI INSTITUTE, a for-profit corporation; DAVID R. HIRSCHAUER, D.O.,

Defendants.

______________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

GARY ROBERTS & ASSOCIATES, P.A.
1675 Palm Beach Lakes Blvd.
Seventh Floor
West Palm Beach, FL 33401
Telephone: 561-686-1800
Facsimile: 561-686-1533

# TABLE OF CONTENTS


I JURISDICTION AND VENUE ....... 1

II RELEVANT TIMES ....... 2

III PARTIES ....... 9

The Plaintiff ....... 9
The Defendants and Participants ....... 11
Defendants ....... 11
Participants ....... 33

IV SUMMARY ....... 41

V NARRATIVE OF FACTS ....... 47

VI FIRST CLAIM FOR RELIEF (18 U.S.C. §1962(c)) ....... 70

VII SECOND CLAIM FOR RELIEF (18 U.S.C. §1962(a)) ....... 73

VIII THIRD CLAIM FOR RELIEF (18 U.S.C. §1962(d) By Conspiracy to Violate 18 U.S.C. §1962(c)) ....... 74

IX FOURTH CLAIM FOR RELIEF (18 U.S.C. §1962(d) By Conspiracy to Violate 18 U.S.C. §1962(a)) ....... 75

X FIFTH CLAIM FOR RELIEF (Sec. 772.102 (3), Fla. Rev. Stat.) ....... 77

XI SIXTH CLAIM FOR RELIEF (Sec. 772.103 (1), Fla. Rev. Stat.) ....... 83

XII SEVENTH CLAIM FOR RELIEF (Sec. 772.103 (4), By Conspiracy to Violate Sec. 772.103 (3), Fla. Rev. Stat.) ....... 84

XIII EIGHTH CLAIM FOR RELIEF (Sec. 772.103 (4), By Conspiracy to Violate Sec. 772.103 (1), Fla. Rev. Stat.) ....... 85

XIV NINTH CLAIM FOR RELIEF (Medical Malpractice)-Bonati, MD ....... 86

XV TENTH CLAIM FOR RELIEF (Medical Malpractice)-Hirschauer, DO ....... 90

XVI ELEVENTH CLAIM FOR RELIEF (Medical Malpractice)-American Medical Care ....... 93

XVII TWELFTH CLAIM FOR RELIEF (Fraud and Deceit) ....... 97

XVIII THIRTEENTH CLAIM FOR RELIEF (Consortium) ....... 99

XIX CERTIFICATE OF COUNSEL, F.S. 766.104(1) ........................................................ 100

XX APPENDIX "A" with attachments ........................................................................ 101

Plaintiffs, **PATRICK O'BRIEN (hereinafter sometimes also referred to "PATIENT") and MARLENE O'BRIEN, his wife**, for causes of action against Defendants, jointly and severally, allege as follows:

I

**JURISDICTION AND VENUE**

1. This action arises under the Act of October 15, 1970, 84 Stat. 922, Pub. L. No. 91-452 (codified as amended at 18 U.S.C. §§1961-68 (1988 and Supp. I, 1989), otherwise identified as 18 U.S.C. §§1961 et. seq., and especially *18 U.S.C. §§1962(c), 1962(a),* 1962(d) to (c) and 1962(d) to (a). This action further arises under *The Civil Remedies for Criminal Practices Act, Section 772.101* et. seq., *Fla. Rev. Stat.* This Court has jurisdiction to hear the Federal claims under *28 U.S.C. §1331* (Federal question), §1334 (commerce), diversity of citizenship, *and the* state law claims pursuant to the supplemental jurisdiction provisions of 28 U.S.C. §1367.

2. At all times relevant, Plaintiff **PATRICK O'BRIEN** and **MARLENE O'BRIEN**, his wife were residents of the State of Texas, although they currently at the time of the filing of this action reside in the State of Pennsylvania.

3. At all times relevant, all Defendants, including **ALFRED O. BONATI, M.D.** (hereinafter **"BONATI"**), **GULF COAST ORTHOPEDIC CENTER - ALFRED O. BONATI, M.D., P.A.**, a Florida corporation for profit **d/b/a GULF COAST ORTHOPEDIC CENTER** (hereinafter referred to as **"BONATI, P.A."**), **MEDICAL DEVELOPMENT CORPORATION OF PASCO COUNTY**, a Florida corporation for profit (hereinafter referred to as **"MDC") d/b/a THE BONATI INSTITUTE** (hereinafter referred to as **"THE INSTITUTE"**), **AMERICAN MEDICAL CARE, INC.** (hereinafter referred to as "**AMERICAN**") **and DAVID R.**

**HIRSCHAUER, D.O.** (hereinafter referred to as **"HIRSCHAUER"**) are individuals and for profit entities related to the enterprise*(s)*, and all affiliated entities and associations-in-fact enterprise(s), are located in and reside within the Middle District of Florida, Tampa Division, and specifically in Pinellas County, and also in Pasco County, Florida, where a substantial part of the events and omissions undertaken by the Defendants, their co-conspirators and aiders and abettors, and related enterprise(s) occurred. Defendants maintain offices and transact business and may be found within the Middle District of Florida, Tampa Division. Venue is present in this Court under *28 U.S.C.* §1391(b).

**II**

**RELEVANT TIMES**

4. The relevant times to this Complaint are from in or about an unknown date prior to 1989 through and including to date. Furthermore:

a. **BONATI** and the business currently described as **BONATI, P.A.** is the outgrowth and continuation of a business and business structure obtained out of a bankruptcy) and as such **BONATI** and the predecessor to **BONATI, P.A.** (Alfred O. Bonati, M.D., P.A.) were previously Defendants in a case tried to a jury entitled "Michele Ammirati v. Alfred O. Bonati, M.D. and Alfred O. Bonati, M.D., P.A., a corporation for profit, U. S. District Court Middle District, Tampa Division, Case Number 92-1052-Civ-T-17 (B).

b. As a result of a 1996 jury verdict in Ammirati, (finding in favor of Plaintiff and against both Defendants on counts of medical malpractice, Florida RICO, Federal RICO and on claims of fraud in the inducement) awarding $2,000,000.00 compensatory damages (which was to be tripled as a result of the state and federal RICO verdicts) and the jury further assessing

$1,500,000.00 in punitive damages, the Ammirati Defendants did each in 1996 file Bankruptcy in the U.S. Bankruptcy Court, Tampa Division. **BONATI** subsequently dismissed his personal bankruptcy. (the Ammirati case was abated by Bankruptcy law and resolved ultimately therein with a monetary award in favor of Ms. Ammirati) under the Arbitration Plan in Bankruptcy case #96-14739-8PF, In Re: Gulf Coast Orthopedic Center - Alfred O. Bonati, M.D., P.A.

c. In Bankruptcy case #96-14739-8PF, Michele Ammirati and some fifty-one (51) other former patient claimants (and in some cases their spouses) subsequently filed creditor claims in U.S. Bankruptcy Court where ultimately a Trustee's Plan of Organization was substantially consummated within the meaning of 11 U.S.C. § 1101 (2) on or about January 3, 2002 with the effective date of the plan occurring on December 21, 2001.

d. The Bankruptcy Trustee's Report on Medical Malpractice Award and Motion to Authorize Distribution in a Medical Malpractice Claim against **Gulf Coast Orthopedic Center - Alfred O. Bonati, M.D., P.A.** dated on or about December 10, 2004 occurred after an Arbitrator appointed by the Bankruptcy Judge in bankruptcy reported as of December 3, 2004 that he had completed his review and resolution of each of the approximately fifty-two (52) medical malpractice claims involving **Gulf Coast Orthopedic Center - Alfred O. Bonati, M.D., P.A.** to include those individual patient claims contained in the Bankruptcy Court filings asserted against **Alfred O. Bonati, M.D.** personally and alleged to be arising out of his negligence, fraudulent acts and violations of state and federal RICO.

e. The total monetary awards entered by the Arbitrator for the fifty-two (52) medical malpractice claims under the Bankruptcy Plan far exceeded the total monies available (approximately $8,000,000.00) for distribution to patient creditor claimants (like Ammirati) under

the Bankruptcy Arbitration Plan. The medical malpractice claimants, for their non-economic (pain and suffering) damages only (not for any lost wages or medical bills insured) received only a small fraction (pro rata) of their bankruptcy arbitration award which award(s) by the arbitrator totaled tens of millions of dollars.

f. As a result of the Bankruptcy Trustee's Plan of Reorganization, a "Channeling Injunction" was entered, meaning it was issued by the Bankruptcy Court under and pursuant to the Plan and Section 11 of the Settlement Agreement in Bankruptcy (dated February 12, 2001), pursuant to which the holder of any malpractice claim or any claim arising out of the same transaction or occurrence giving rise, in whole or in part, to a malpractice claim, including Claims for indemnity and contribution, were "... permanently and forever enjoined, prohibited and prevented from pursuing or prosecuting, directly or indirectly, any and all such claims against the malpractice defendants (including **Dr. BONATI** or Dr. Hirschauer), or any of them". The named "Malpractice Defendants" under the Bankruptcy Plan for whom indemnity was paid (through payment of the Bankruptcy settlement agreement of February 12, 2001 stated the settlement was without an admission of liability pursuant to the negotiated terms) included the defendant physicians, staff and related entities involved in the care and treatment of **PATRICK O'BRIEN** in later years in 2004 and 2005, who are:

a. Alfred O. Bonati, M.D.;
b. David Hirschauer, D.O.;
c. Gulf Coast Orthopedic Center - Alfred O. Bonati, M.D., P.A.;
d. Medical Development Corporation of Pasco County, Inc.; and
e. Gulf Coast Orthopedic Center.

g. On, before or subsequent to the Substantial Consummation of the Bankruptcy Proceedings, and on or about December 21, 2001 **BONATI,** effectively acquired the

substantial control and absolute ownership of the various corporations and businesses named as Defendants herein and continued to use the fictitious name Gulf Coast Orthopedic Center and essentially assumed the certain business assets of the Debtor in Bankruptcy which had been previously managed by the Trustee in Bankruptcy, since the date of filing Bankruptcy in 1996.

h. The Bankruptcy proceedings also did not enjoin Plaintiffs **PATRICK O'BRIEN and MARLENE O'BRIEN** herein, nor does the 2001 Bankruptcy Court Channeling Injunction apply to the Plaintiffs herein, (which Channeling Injunction simply enjoined past medical malpractice claimants who were "*...holders of any malpractice claim*" (meaning medical malpractice and similar claims, sounding in contract, tort, fraud, loss of consortium, state or federal RICO and punitive damage claims).

5. In November 2004, Plaintiff **PATIENT, PATRICK O'BRIEN,** was first seen at Gulf Coast Orthopedic Center by Limonte, M.D. with the history of prior surgery and complaints referable to back pain. Plaintiff Patient had researched **DR. BONATI** and **The Bonati Institute/Gulf Coast Orthopedic Center** and The Bonati Institute for Advanced Arthroscopic Surgery from a television commercial he saw and then his MRI and x-ray films to the Defendants' Hudson, Florida facility for evaluation. Patient was seen at **The Bonati Institute** by the Defendants, acting individually and collectively, during the period of time on or about November 15, 2004 through July 2005 and underwent ten (10) back surgeries in rapid succession on at least the following dates and had additional related care:

Surgery 1. November 18, 2004
Jorge Weksler, M.D. (Surgeon) and Hirschauer, D.O. (Anesthesiologist)

Surgery 2. November 30, 2004

Bruce Moffatt, M.D. (Neurosurgeon), Alfred O. Bonati, M.D. and Toni Campoli (Anesthesiologist)

Surgery 3. December 6, 2004
Jorge Weksler, M.D., Alfred O. Bonati, M.D. and Susan Brandt, M.D. (Anesthesiologist)

Surgery 4. December 13, 2004
Bruce Moffatt, M.D. and Alfred O. Bonati, M.D. and Susan Brandt, M.D. (Anesthesiologist)

Surgery 5. December 20, 2004
Bruce Moffatt, M.D. and Alfred O. Bonati, M.D. and Susan Brandt, M.D. (Anesthesiologist)

Surgery 6. January 3, 2005
Bruce Moffatt, M.D. and Alfred O. Bonati, M.D. and Susan Brandt, M.D. (Anesthesiologist)

After returning home to Texas, Plaintiff **PATIENT** made a second trip to **The Bonati Institute** during the period of time on or about June 18, 2005 through July 2, 2005.

Surgery 7. June 23, 2005
Bruce Moffatt, M.D. and Susan Brandt, M.D. (Anesthesiologist)

Surgery 8. June 29, 2005
Bruce Moffatt, M.D. and Susan Brandt, M.D. (Anesthesiologist)

On July 2, 2005, Plaintiff **PATIENT** and his wife flew home to Texas by airline. Plaintiff **PATIENT** dealt with pain, nausea, headache, achy, slight fever and was leaking a yellowish fluid out of his recent surgical spinal wound and he called the "on call number" at **The Bonati Institute** and had no response.

During the period of time July 3, 2005 through July 16, 2005, Plaintiff **PATIENT** returned to **The Bonati Institute** in Florida having awoke at home in Texas with a severe headache and large amount of yellow fluid leaking from his wound. Plaintiff **PATIENT** again called the on

call emergency number at **The Bonati Institute** without response and returned by airline to Florida through the Tampa Airport.

At approximately 11:30 p.m., Plaintiff **PATIENT** received a call from an RN connected with **The Bonati Institute** who, upon learning of the foregoing signs and symptoms and of the yellowish fluid leaking from Plaintiff **PATIENT**'s wound suggested he lay flat until she came over the following morning during the Fourth of July weekend.

Surgery 9. July 5, 2005
Bruce Moffatt, M.D. (Neurosurgeon) and David R. Hirschauer, D.O. (Anesthesiologist)

Surgery 10. July 12, 2005
Alfred O. Bonati, M.D. (Orthopedic Surgeon) and Susan Brandt, M.D. (Anesthesiologist)

Returning to Texas, on August 23, 2005 and on September 15, 2005, Plaintiff placed in the U.S. Mail a letter (**Exhibit "A-1"** attached) explained the **PATIENT'S** situation with the adrenal failure, seeking assistance from his doctor(s) but received no response from **DR. BONATI**.

It was not until September 28, 2005 that Plaintiff received an interstate call from neurologist, Dr. Limonte on behalf of **The Bonati Institute** in Florida inquiring how Plaintiff **PATIENT**, then in Texas, was doing and whether he was on replacement steroid therapy. During that interstate phone call between Texas and Florida, Plaintiff **PATIENT** inquired of Limonte "...how many steroid injections are recommended in a year..." to which Limonte replied that three (3) a year was the maximum. By that time, at **The Bonati Institute** and **Gulf Coast Orthopedic Center**, under the Defendants' care, Plaintiff had already received five (5) such injections in three (3) weeks and nine (9) steroid injections in six (6) months. Limonte indicated that should not be a problem , a false statement of material fact designed to and which did mislead the Patient, and that

he would send the information "upstairs" and call back on Friday if there was a problem. The Plaintiff **PATIENT** never heard from him thereafter and received no response from **BONATI** that anything was amiss or was medically other than normally to be expected.

6. Plaintiff **PATIENT** further underwent a series of pain management injection(s) at the **INSTITUTE** in the cervical and lumbar spine administered or recommended by the Defendants and necessitated by the Defendant's prior care including unnecessary surgeries and procedures and care to include Pain Management Procedures on:

1. November 16, 2004 - diagnostic facet joint injections bilaterally at L4/L5 and L5/S1 - four (4) joints - performed by David R. Hirschauer, D.O.

2. December 1, 2004 - Dr. Hirschauer performed the first Epidural Steroid Injection in the six (6) month period.

3. December 7, 2004 - Second epidural steroid Injection in the six (6) month period by David Hirschauer, D.O.

4. December 21, 2004 - Dr. Hirschauer performed the third Epidural Steroid Injection in a six (6) month period.

5. January 4, 2005 - Dr. Hirschauer performed the fourth Epidural Steroid Injection in a six (6) month period.

6. June 20, 2005 - Fifth Steroid injection in the CI bursa on the right with 100 mg of Kenalogn and 20 cc of Lidocaine injected by Dr. Bonati.

7. June 24, 2005 - Dr. Hirschauer performed the sixth Epidural Steroid Injection in a six (6) month period.

8. July 6, 2005 - Dr. Hirschauer performed the seventh Epidural Steroid Injection in a six (6) month period.

9. July 13, 2005 - Dr. Hirschauer performed the eighth Epidural Steroid Injection (and a ninth Steroid Injection including the SI Joint Steroid Injection that Dr. Bonati performed on June 22, 2005) in a six (6) month period. This injection was also the fifth Steroid Injection in a three (3) week period (including the SI Joint Steroid Injection that Dr. Bonati performed on June 22, 2005).

7. However, Defendants' **BONATI, BONATI, P.A. and MDC's** (by whatever name or corporate identity) fraudulent and otherwise unlawful schemes have been ongoing from an unknown date prior to 1985 to the present, and are continuing within the confines of the Middle District of Florida. Additionally, since on or about April 7, 1970, on a continuing *basis,* **BONATI,** has employed a series of subterfuges, artifacts, misstatements, misrepresentations, and supplied false information to educational, licensing and teaching institutions, all within a scheme devised by him to advance his own status and to make money and to achieve recognition as a licensed physician in one or more states, which scheme has worked, in that he is currently licensed as a physician in the states of North Carolina and Florida, and is actively practicing medicine and surgery in the State of Florida, where he established G.C.O.C. (**Gulf Coast Orthopedic Center**, a fictitious name of **Bonati, P.A.** since approximately August 7, 1998), located at the same address and campus, Bonati also established **The Bonati Institute**, (which has been a fictitious name of **MDC,** since 1996). **MDC** was established by **BONATI** in 1983, where, as ambulatory surgical center with surgical operating rooms and support staff, Plaintiff Patient, **PATRICK O'BRIEN,** was ultimately seen, repeatedly operated on, injected and treated in 2004 and 2005. Defendant **BONATI** has from these corporate entities, physicians, staff and schemes continued receiving economic and personal benefit from these tricks, artifacts, misrepresentations and misstatements, continuing to date.

**III**

**PARTIES**

**The Plaintiff**

8. Plaintiff Patient, **PATRICK O'BRIEN**, at all material times, is married to **MARLENE O'BRIEN,** his wife, and was, at material times, not actively employed while under the care of the Defendants. Plaintiff **PATIENT** was insured under United Healthcare Services policy for the T-Mobile Group Number 000222244, a health plan set up under the federal Employee Retirement Income Security Act of 1974 (ERISA). 88 Stat. 829, as amended, 29 U.S.C. § 1001, et seq. The Plan provided to Plaintiff **PATIENT** virtually unlimited insurance coverage to pay for medical care, treatment and surgery which Defendants exploited. Moreover, Plaintiff incurred total medical billings as a result of Defendant's care and surgery(ies) of more than $660,000.00 for which United Healthcare paid more than $416,000.00. Plaintiff continues to date to incur additional medical bills and expenses as his wife, a T-Mobile employee is no longer able to secure coverage under this United Healthcare group policy for herself or for Plaintiff **PATIENT, PATRICK O'BRIEN**, her husband. Plaintiffs have personally repaid more than $50,000.00 to their insurance group health carrier to date for medical bills and expenses while a patient at The Bonati Institute as alleged herein.

a. Neither the Defendants nor any other individuals or entities connected with the Defendants, including any other participant in the pattern of unlawful activity and enterprise*(s)*, including all affiliated entities and *the* associations-in-fact enterprise have access to any money from United Healthcare (which provides benefits and coverage to Plaintiff **PATIENT** as a result of any pre-existing problems in the care rendered by the Defendants) except through rendering medical care, injections of steroids, advise, recommendations, surgery, assurances and health care services to Plaintiff **PATIENT** as a patient "target", triggering insurance coverage to pay defendant's bills for their services. It was in this context that Defendants undertook their course

of illegal conduct and otherwise unlawful scheme, in an attempt to reach patient dollars through the United Healthcare's Group Policy through T-Mobile, wife insurer, which had at material times insured Plaintiff **PATIENT, PATRICK O'BRIEN**. As noted above, **PATRICK O'BRIEN** has paid the United Healthcare lien in whole or in part form his own sums or other out-of-pocket monies.

## The Defendants and Participants

### Defendants

9. **BONATI** is a physician licensed to practice medicine in the State of Florida since 1981, holding himself out to the public including through a large World Wide Web presence as specialist in Orthopaedic medicine and surgery. In reality, **BONATI** has taken and failed the following examinations as to his medical knowledge:

A. F.L.E.X. (1976, 1977, 1978 and "...probably..." in 1979, not finally passing it until 1980.

F.L.E.X. is the United States medically licensing examination (PM) for trademark sponsored by the federation of state medical boards (FSMB) of the United States, Inc. and the National Board of Medical Examiners ® (NBME). Results from the United States MLE (F.L.E.X. examine as it was known in the past) are reported to medical licensing authorities in the United States and its territories for use in granting the initial license to practice medicine.

The U.S. MLE assesses a physician's ability to apply known, concepts, and principles, and to demonstrate fundamental patient-centered skills that are important in health and disease that constitute the basis of safe and effective patient care.

B. American Board of Orthopedic Surgery (ABOS) (which Dr. Bonati failed twice, including once in 1983).

The American Board of Orthopedic Surgery, Inc. functions to serve the best interest of the public and of the medical profession by establishing

educational standards for orthopedic residences and by evaluating the initial and continuing qualifications and knowledge of orthopedic surgeons.

Orthopedics is a broad based medical and surgical specialty, dedicated to the prevention, diagnosis and treatment of diseases and injuries of the muscular skeleton system.

The American Board of Orthopedic Surgery is one of twenty-four certifying boards that have met the educational and organizational requirements necessary for membership in the American Board of Medical Specialty. The American Board of Orthopedic Surgery is made of a distinguished orthopedic surgeons who are active in patient care, education and research and is located in Chapel Hill, North Carolina.

The American Board of Medical Specialty (ABMS) assist the member boards such as ABOS in promoting quality and efficiency in the process of evaluating and certifying physician specialists.

To remedy his lack of ABOS Board certification as an orthopedic surgeon, **BONATI** created his own Board, when he realized the importance of establishing his own professional creditability as being board certified. Among the requirements to be licensed in Florida, an applicant may not have committed any act or offense in the jurisdiction of Florida or other jurisdictions which would constitute the basis for disciplining physicians, pursuant to Chapter 458.331, *Fla. Rev. Stat.*, which statute identifies grounds for disciplinary action in the State of Florida against a physician. However, as a minimum:

a. **BONATI** presented false information to the U.S. Immigration Service at the time when he gained entry into the United States from Chile.

b. During his medical training, **BONATI** submitted falsified letters of recommendation while seeking entry into an orthopedic residency program at Bowman-Grey School of Medicine at Wake Forest University in Winston-Salem, North Carolina.

c. **BONATI** supplied false information to the State of North Carolina to obtain a license to practice medicine in the State of North Carolina, a license which he still retains. F.S. 458.331(1)(a); F.S. 458.331(gg)

d. **BONATI** supplied false information to the State of Florida to obtain a license to practice medicine in the State of Florida, a license which he annually renews and still retains. F.S. 458.131 (1)(a); F.S. 458.331(gg); F.S. 456.067; F.S. 455.2275.

e. **BONATI** has on repeated occasions, filed false affidavits under oath or sworn to under penalty of perjury while a resident of the State of Florida as more specifically set forth hereinafter. F.S. 458.331(1)(G)(h)

f. **BONATI** employees' false, deceptive or misleading advertising to lure unwary patients to his practice. F.S. 458.331 (1)(d).

g. **BONATI** had made deceptive, untrue and fraudulent representations in or related to the practice of medicine, or has enlarged a truth or scheme in the practice of medicine. F.S. 458.331(1)(k)(n)

h. **BONATI** has committed repeated acts of malpractice. F.S. 458.331(t); F.S. 456.50;

i. **BONATI** has advertised and has held himself out while testifying under oath and has listed himself on The Bonati Institute website and in print advertisements as a Board Certified specialist yet he is not by Florida law allowed to do so and has not received formal recognition ever as a "Specialist" from any Board approved by the American Board of Medicine

Specialties or, by other recognizing agency governed by the Board. F.S. 458.331(1)(ll); F.S. 458.3312.

j. **BONATI** has exploited patients, including **MR. O'BRIEN** for financial gain. F.S. 458.331(1)(n).

10. **BONATI** claims alternatively to have been born in Chile or in other countries, and, from time to time throughout his life has been known by other names, including Alfred Octavius Bonati, and Alfred Bonati Ramos, and has also, from time to time, used or has allowed himself to be known by the names of Alfred Octavio Bonati, Alfred Bonati, Alfred O. Bonati, Alfred O. Bonati, Alfredo O. Bonati-Ramos, Alfred O. Bonati, Don Alfredo Bonati Ramos, and Alfredo Octavio Eduardo Bonati Ramos. **BONATI's** use of these various names throughout his lifetime has been for the purpose of creating uncertainty about his identity and he has employed deceptive use of these various names to advance his own personal agenda and for professional and financial gain.

11. **BONATI** further has, from time to time when it has served his own personal or financial interests, and in advancement of his medical education, practice or career, stated that he has been born on two (2) separate dates, the first being September 20, 1939, and the second date of his birth being listed as September 20, 1942. Furthermore:

a. In obtaining the right to practice medicine in the United States and in the State of Florida, **BONATI** has consistently and repeatedly employed artificial and misstatements in using the wrong date of birth to allow himself to gain entry into various professional medical programs of

education and training in preparation for establishing a medical practice within the United States, and ultimately, in the State of Florida.

b. **BONATI** has employed the use of a later birth date to make himself more attractive to medical training programs in the medical educational complex within the United States, as being younger than he really is, and therefore, more likely to be accepted for further medical training and education, including residencies and internships, to which he ultimately did obtain some exposure, all ultimately leading up to his position as a surgeon and physician licensed in Florida and North Carolina.

12. **BONATI** has used, or caused to be used, or acquiesced in the use of, the birth date of September 20, 1942, knowing that date to be false, in furtherance of his own personal and economic benefit, on at least the following documents:

a. Florida Driver's License No. B-530-014-42-340, on which he has listed his correct name as Alfred Octavio Bonati.

b. Department of Professional Regulation Board of Medical Examiners of Florida endorsement application for Florida medical license (listing his birthplace as "Genoa, Italy; Chile"), which document was executed by **BONATI** under oath and under declaration of penalty of perjury, that the answers and all statements made on the application were true and correct, such application being sworn and subscribed to and dated the 12th day of March, 1981. This application lists the name Alfred Octavius Bonati.

c. Florida Marriage License Application, applied for in Jacksonville, Florida, concerning his application to marry his wife, which license was issued by the State of Florida.

d. Application for license to practice medicine and medical license issued by the State of North Carolina to **BONATI**, believed to be identified as number 24575, issued August 16, 1980.

I. In 1993, after his deposition was taken by the undersigned counsel in the U.S. District Court, Middle District, Tampa Division case - Michele Ammirati v. Alfred O. Bonati, M.D., et al., Case Number 92-1052-Civ-T-17 (B), and BONATI's use of false date information was identified and documented through questioning of **BONATI** under oath, **BONATI** sent a letter advising the licensing board for physicians in the State of North Carolina, that his birth date was incorrectly stated on a licensing document which he had previously filed with them in connection with obtaining his North Carolina medical license. This action by **BONATI** which occurred between the dates of January 6, 1993 (deposition date), and April 10, 1993, evinces **BONATI'S** acknowledgment and continuation of the basic fraudulent scheme and also violations of the use of the United States Mail (between Florida and North Carolina) in continuance of his fraud targeted at and practiced often against patients with medical insurance such as the Plaintiff **O'BRIEN**, so that his actions are

continuing in nature. In contacting the State of North Carolina in early 1993 by personally writing them, **BONATI** was attempting to prevent the start of an investigation in the State of North Carolina concerning his medical license, which would then have triggered an investigation in the State of Florida, where he currently practices medicine and surgery. That indeed would ultimately require the reporting of **BONATI** to the National Practitioners Data Bank so that **BONATI** would be unable to practice medicine and participate as a co-conspirator or to set about and continue his associations-in-fact of himself and the other Defendants herein and participants or related entities that are affiliated without a valid Florida medical license, which are currently ongoing and have been ongoing organizations and associations-in-fact over the course of the years. Should the State of North Carolina suspend or revoke, or take action against his medical license, that action would be reported, through the interstate and national health care licensing programs, to the State of Florida, thereby triggering a Florida investigation as to **BONATI**'s Florida medical license. **BONATI** cannot practice medicine in the State of Florida without a valid Florida medical license to continue his own individual medical practice and *the enterprise(s)*, **BONATI, P.A.**, and the association-in-fact of **BONATI,** and the defendants herein and the

other participants and related entities, which are currently ongoing and have been ongoing organizations over the course of the years, growing in number of participants and entities since 1981 when **BONATI** began practicing medicine in Pasco County, Florida, under a Florida medical license.

ii. Since his initial deposition under oath in the Michele Ammirati v. Alfred O. Bonati, M.D., et al. case taken over three (3) days beginning January 6, 1993, when **BONATI**'s actions in obtaining medical education, training and licensure under an incorrect birth date and his representation and use of the false educational schooling and credentials was exposed (violation of F.S. 817.566; F.S. 817.567), **BONATI** immediately gave the order to attorneys and to others to correct all of his records, and undertook to correct some of them himself. In an effort to protect his right to practice medicine in the State of Florida, **BONATI,** caused to be issued a letter from the law offices of Wilson Jerry Foster, Tallahassee, Florida, dated January 8, 1993, to Cheryl Sellers, Senior Clerk, Board of Medicine, Department of Professional Regulations, Tallahassee, Florida, with regard to the license of **BONATI,** requesting a copy of that portion of **BONATI**'s licensing file where he responded to the query for his date of birth. It further was represented to the Board of Medicine through this correspondence

of January 8, 1993 that ". . . *a scrivener's error may have resulted in an incorrect report of* ***Dr. BONATI****'s date of birth.*" This was a false or misleading statement. However, on April 10, 1993, while under *oath,* ***BONATI,*** has acknowledged that the incorrect birth date that he sought to get corrected was *not* as a result of somebody improperly recording his correct date of birth (i.e. a scriveners error), but rather was what he called a " . . . *mistake of youth. I looked younger, I wanted to remain younger; and I think that is normal in all humans* . . .". He has not advised the State of Florida or the State of North Carolina about any other false statements or representations that made to them concerning immigration, citizenship, or education or the schools that he attended or the colleges he represented he had attended as a student which do not even exist.

iii. **BONATI** has further caused or initiated other correspondence or actions to change the notation of his date of birth at institutions where he trained or received education.

e. Medical Diploma from the University of Seville, issued in Madrid, Spain on September 8, 1969, showing **BONATI**'s date of birth as being September 20, 1942, (which **BONATI** has admitted himself to altering this Diploma to change the correct birth date from September 20, 1939 to September 20, 1942). Such alteration is in violation of F.S. 817.566.

f. **BONATI**'s Board of Medicine, Department of Professional Regulation, State of Florida medical license, issued June 16, 1981, number 038324 is issued for a date of birth of September 20, 1942.

g. Application for Internship or Residency at The University of Alabama in Birmingham/The Medical Center/University of Alabama Hospitals and Clinics, wherein **BONATI** has listed his place of birth as Italy and his country of citizenship as Italian. This Application for Internship or Residency was executed by **BONATI** on or about June 9, 1973.

h. University of Alabama Information Needed from Foreign Visitors form, also indicating dual citizenship for **BONATI** in the countries of Chile and Italy, although **BONATI** has denied dual citizenship.

i. Biographical Data on Physicians from the Biographical/Historical Files of the American Medical Association, Chicago, Illinois, dated August 25, 1972.

j. Cook County (Illinois) Hospital personal history card for "Alfred O. Bonati", incorrectly stating that he attended Catholic University in Rome, Italy seeking a Bachelor's Degree, such bogus university not existing by **BONATI**'s own admission, which personal history card contains the statement, signed *by **BONATI***, which reads "I hereby affirm these answers to be correct."

k. It should be noted that the copy of the University of Seville, Spain Medical School Diploma provided by **BONATI** to the State of Florida, Department

of Professional Regulations, State Board of Medical Examiners of Florida, had omitted his date of birth, which had been whited out, or otherwise obliterated from the diploma, so that an accurate copy was not made available by **BONATI** to the State of Florida at the time the processing of the medical license for **BONATI** was being undertaken; it showed neither September 20, 1939, nor September 20, 1942 as being his date of birth. Further, there was submitted by **BONATI** to the State of Florida, as required of **BONATI**, a translation of his Diploma from Spanish into English, executed under oath by an interpreter, of a Spanish document falsely submitted as a true copy of the original by **BONATI**.

l. Application for Medical Staff Privileges at Bayonet Point/Hudson Regional Medical Center, said medical staff membership being issued on or about September 1, 1981 by said hospital.

m. Application to take the 1983 Certification Examination for The American Board of Orthopaedic Surgery, as candidate number 044, which test was not successfully completed and which was retaken a second time and, again, also not successfully completed, **BONATI** having not even passed the oral or the written portions of the ABOS examination.

n. Georgetown University Hospital Application for Appointment to Training Program for Junior Assistant Resident in the Department of Neurosurgery, and accompanying documentation, executed and in force and effect during the period 1975 through 1976.

o. United States Immigration Service Document, filed with the United States Immigration Service in Miami concerning **BONATI**'s entry into the United States in April of 1970, incorrectly listing his date of birth as September 20, 1942. This document specifically is a Non-Resident Visa showing admission to the United States from Santiago, Chile on April 15, 1970, admitted as Class F-1 until April 14, 1971, on a Visa issued April 7, 1970, admitted through U.S. Immigration in Miami as Visa Number 012932, showing the false date of birth for Alfredo Bonati as September 20, 1942.

p. **BONATI** executed an Application for Residency or Internship - Suburban Hospital, Bethesda, Maryland, indicating further falsely an internship in Spain and a present membership in the Royal Medical Society (Spain), as well as hospital, research and practical experience in private practice in Spain, which is incorrect.

q. Applications for internships and residencies for Alfredo O. Bonati, then purporting to be age 29 and a Chilean national, and incorrectly stating additionally that he attended college at the University of Naples in Naples, Italy, **BONATI** later acknowledging that there is no University of Naples (bogus) in Naples, Italy, or that he does not know of any such institution, which document was executed on November 3, 1971 by "Alfredo Bonati", under certification that his answers were true and complete to the best of his knowledge on that date, with the files of Franklin Square Hospital, where these documents were submitted, further showing **BONATI** to have

incorrectly represented previous hospital experience, other than internship and residency at the University of Seville as an intern, with employment records at that facility also showing a false birth date for **BONATI** of September 20, 1942.

r. Document filed with the Clerk of the Circuit Court of Pasco County, Florida, at OR Book 1142, page 763-A, and stating in part, " . . . I, Alfred O. Bonati, of . . . N.C., born at Genoa, Italy, on the 20th of September, 1942 . . . graduated at University of Seville date 1969 . . ." signed under oath stating that affiant had complied with all statutory requirements governing the practice of medicine, and that no fraud, misrepresentation or mistake in any material regard was employed by anyone, or occurred in order that such certificate should be granted, and signed under oath on July 29, 1981 in Pasco County, Florida, by Alfred Octavius Bonati, of Hudson, Pasco County, Florida.

s. Application to Bowman-Gray/Wake Forest Medical School and training program by handwritten application, **BONATI** falsely represented his place of birth as Genova, Italy and also falsely stated that he was born 20 September 1942, and falsely identified his citizenship at that time was U.S.A. He further incorrectly stated the dates that he was at Suburban Hospital, which were 1971 through 1972, as being November 1970 through November 1971, and also omitted the fact that he had worked at Washington Hospital Center during the period approximately July 1974

through June 1975, and also omitted the fact that he had worked at Franklin Square Hospital in Baltimore, Maryland during the period December 1971 through approximately June 1972, despite that detailed information being called for on the Bowman-Gray/Wake Forest Medical School application. **BONATI** omitted the fact of his work at Franklin Square Hospital in Baltimore, Maryland and also omitted the fact that he was at Washington Hospital Center because he had not done well there and, recognizing the inadequacies of his medical training and understanding, he wanted to hide his deficiencies at those two hospital facilities while he was in training and effectively make them "disappear" off of his record of medical training.

13. To the contrary, **BONATI** has listed his date of birth in other documents as being September 20, 1939, to include at least the following documents:

a. United States of America Passport, issued to "Alfred Octavius Bonati", on September 12, 1988, expiring September 11, 1998, issued in Miami, Florida as Passport Number 042275663, showing his place of birth as Chile, which he has used constantly for travel in and outside of the United States. (How he identifies his date of birth on his current passport in current year 2007 or during the in between years, is presently unknown).

b. Official Civil Record of Chile, dated on or about February 27, 1973, indicating that "Alfredo Octavio Eduardo Bonati Ramos", was born on September 20, 1939 in Santiago, Chile (Certificate of Birth).

c. In Answers to Interrogatories, signed under oath by **ALFRED O. BONATI** on October 26, 1992, in the litigation known as **ALFRED O. BONATI, M.D.**, etc., et al., v. Times Publishing Company, et al., identified initially as Case No. 92-06824, filed in Hillsborough County and transferred to Pasco County, Florida, **BONATI** indicated in an answer requesting the date and place of his birth, that " . . . Plaintiff states that he was born on September 20, 1939, at Santiago, Chile. Upon his birth, Plaintiff was registered at the Italian embassy as Italian."

d. **BONATI** has applied for and been granted U.S. Citizenship and it is possible and therefore alleged that he utilized a birth date of September 20, 1939 on his citizenship application and related papers despite having used a different date upon obtaining entry into the United States in April, 1970 from Chile.

14. Additionally, **BONATI** has caused to be included in various applications for hospitals and educational privileges and medical training, certain Letters of Recommendation, which **BONATI**, who was solely responsible for causing the recommendation letters to be created initially and then transmitted from one institution to another as he advanced his training and education, knew or had reason to know, were not actually drafted, issued nor signed by the Physicians listed on the letters of recommendation. Examples include a letter purporting to be from David F. Powell, M.D., then Assistant Professor at The University of Alabama in Birmingham/The Medical Center/The University of Alabama Hospitals and Clinics, dated June 21, 1974, which letter contains numerous misspelling, syntax and grammatical errors, and a

signature other than the actual signature of David F. Powell, M.D. Dr. Powell has denied through a deposition, under oath, in the Michele Ammirati v. Alfred O. Bonati litigation in Federal court and during Florida state court litigation by deposition in Alfred O. Bonati, M.D. v. Times Publishing Company (St. Petersburg Times) and as a live witness under oath on the stand in the actual trial of Ammirati v. Bonati in Federal court in Tampa in 1996, that he authored and signed the June 21, 1974 "fake" letter of apparent recommendation which has been utilized by **BONATI** to advance **BONATI'S** medical education, stature and professional career. (See, F.S. 817.566 and F.S. 817.567)

15. A further example of a comparable "Fake" Recommendation letter is a letter purported to be written by Allan Hall, M.D., then Chairman, Department of Surgery, Fairfax Hospital, Falls Church, Virginia, dated January 20, 1976, recommending **BONATI** without hesitancy to a residency program as a result of **BONATI**'s rotation on the general surgery service at Fairfax Hospital, which is part of the Georgetown University Surgical Program. Dr. Hall has given sworn testimony in the Florida State Court litigation that Dr. Bonati brought against Times Publishing Company (St. Petersburg Times) that he did not write the letter of recommendation for BONATI, nor was it his signature.

16. **BONATI** caused to be completed and filed an employment application for employment as a medical intern with Suburban Hospital in Bethesda, Maryland, at a time when **BONATI** knew that he held no E.C.F.M.G. certificate, and accordingly, was not eligible for appointment as an intern or resident in any United States hospital, as detailed to **BONATI** according in a letter of May 18, 1971, from the Educational Council for Foreign Medical Graduates in Philadelphia, Pennsylvania.

17. During the course of pre-suit screening involving one count of the Ammirati Federal litigation against **Bonati**, pursuant to the requirements of *Section* 766.106, *Fla. Rev. Stat.*, an unsworn statement of "Alfred O. Bonati" was taken on May 8, 1992, wherein, as a minimum, **BONATI** falsely stated and misrepresented the year of his birth as being 1942, misrepresented that he passed the FLEX (foreign medical licensing exam) examination on the first time, when in reality, he had taken the FLEX examination in December of 1976, December of 1977, June of 1978, June of 1979, and it was not until June of 1980 that he successfully passed the examination. Further, during pre-suit screening discovery in this cause as mandated and allowed by Section 766, Fla. Rev. Stat., specifically Section 766.106, **BONATI** and the other defendants failed to provide full, accurate and complete medical charts and records for the Plaintiff Patient, **PATRICK O'BRIEN**, which accurately reflected what actually transpired during the care and treatment of Plaintiff **O'BRIEN** (instead providing pre-dictated/Pro Forma records) which he had also failed to provide to **O'BRIEN** prior to the institution of the Notice of Intent to Initiate Litigation upon presentation of a proper medical authorization from the **PATIENT**, which **BONATI and BONATI, P.A.** and the other defendants were required to do, as a matter of law under Chapter 395, Fla. Rev. Stat., Chapter 766, Fla. Rev. Stat., and Chapter 455, Fla. Rev. Stat. **BONATI** and the other defendants, all of whom had the same legal counsel, accordingly, failed to comply with Section 766.205, Fla. Rev. Stat., thereby subjecting himself and **BONATI, P.A.** and the other defendants, for Court determination as to whether or not their denial of any professional liability for their medical care and treatment of Plaintiff PATIENT, **PATRICK O'BRIEN** rests on a reasonable basis, and whether or not **BONATI, MDC, HIRSCHAUER, AMERICAN** and **BONATI, P.A.** allowed Plaintiffs access to all discoverable information as required under

Section 766, Fla. Rev. Stat., without formal discovery, as a grounds for dismissal of any defense that **MDC, BONATI, BONATI, P.A., AMERICAN** and **HIRSCHAUER** may assert and as a breach of their obligation to comply with good-faith discovery requirements. Furthermore:

a. The denial of **BONATI, MEDICAL DEVELOPMENT CORPORATION OF PASCO COUNTY, GULF COAST ORTHOPEDIC CENTER - ALFRED O. BONATI, M.D., P.A. (BONATI, P.A.), GULF COAST ORTHOPEDIC CENTER, d/b/a THE BONATI INSTITUTE, AMERICAN and HISCHAUER, D.O.** once again utilized the affidavit of Florida Orthopedic Surgeon, Richard Smith, M.D. dated March 28, 2007 to resist the Plaintiffs' claims detailed in their notice of intent under the requirements of F.S. 766.106 (3) and 766.203 (3) and 766.206 (3). (Smith's affidavit given under F.S. 766.203(3)(b) was submitted by **BONATI, BONATI, P.A., MDC, AMERICAN** and **HIRSCHAUER** for a corroboration of lack of reasonable grounds for medical negligence litigants.) Dr. Smith has long maintained a business as a "rubber stamp" expert for or a financial relationship with Dr. **Bonati** and with **The Bonati Institute** (formerly known as **Gulf Coast Orthopedic Center**), and **MDC** and related defendant physicians and entities; and

b. Dr. Smith has filed an affidavit(s), not in good faith, to allow Dr. **Bonati** and **Gulf Coast Orthopedic Center** and **The Bonati Institute** and its physicians and surgeons and related entities (including the corporations

such as **MDC** which are also defendants here) to deny responsibility during pre-suit under F.S. Chapter 766 (corroboration of lack of reasonable grounds for medical malpractice litigation), it is believed, on more than twenty-five (25) separate occasions, including on claims over the years made against Bonati-related physicians, surgeons and businesses whereby those identified as Defendants here, and also on patient claims which were caught up in the Bankruptcy proceedings filed in 1997 and who were denied full collectability of their damages in the United States Bankruptcy proceedings *In re: Gulf Coast Orthopedic Center - Alfred O. Bonati, M.D., P.A.* referred to hereinabove and on other patient claims and in post-Bankruptcy cases.

c. Dr. Smith has actual knowledge or should reasonably known or been aware that a large portion of the medical charts and records and certainly significant portions of the medical charts and records of *any* patient (including **Plaintiff PATIENT** here) are not accurate but are "canned" or otherwise described as pre-dictated (even before a patient is ever seen or operated on at The Bonati Institute/Gulf Coast Orthopedic Center) and designed to and are computer generated from a "forms bank" so that "one generated report fits all" (regardless of facts), utilized by the Defendants (with only the patient's name, surgical site and operated side (right or left) and the date of procedure are actually added *after* surgery) that are and virtually everything else in the patient's medical charts and records,

including the operative reports are pre-dictated (operative reports and substantial pre-dictated medical charts and records) which paint a "rosy and benign" seemingly non-assailable picture of the surgery and proceedings and care rendered to **PATRICK O'BRIEN** and to other patients, and also the need therefore, yet, **BONATI** and **BONATI, P.A.** and the related entities who employee physicians and medical staff require in the employment contract, that "...physician shall keep and maintain complete and *accurate* patient files and records..."

d. Dr. Smith effectively provides a pre-suit screening "rubber stamp" (in bad faith under Chapter 766, Florida Statutes) denying the merit of each and every medical malpractice claim presented against **BONATI** and his "Institute" and against **Bonati's** wholly-owned entities and the participants and their employee physicians such as Dr. Weksler and others over the years. These actions by **BONATI** and the defendants and their entities in securing Dr. Smith's affidavit given in bad faith are a clear and intentional violation of the Florida Legislators' stated purpose under Chapter 766, Florida Statutes to reduce the high cost of medical negligence claims and to provide for their prompt resolution and to eliminate frivolous defenses by verifiable requirements. It is believed further and alleged that Dr. Smith has never refused to sign an affidavit to corroborate lack of reasonable grounds to bring a medical negligence claim against **BONATI, MDC, BONATI, P.A.,** Weksler or any other employee or physician working at the Hudson,

Florida campus of The Bonati Institute/Gulf Coast Orthopedic Center, and that Dr. Smith has never supported a claim brought by Notice of Intent for a patient against anyone at or any associated entity at **The Bonati Institute/G.C.O.C.** or their healthcare providers or institutions despite the fact that a *minimum* of fifty-two (52) other physicians have signed affidavits and given depositions under oath reportedly finding substandard care over the years consistently (including a series of neurosurgeons, orthopedic surgeons, radiologists and anesthesiologists who have found, as a minimum, reasonable grounds to believe that the care rendered by **BONATI**, his entities and the Defendants and participants was substandard and caused or contributed to injury to a medical patient) there under Chapter 766, Florida Statutes.

e. Dr. Smith is not an osteopathic physician and not an anesthesiologist who can provide affidavit's for Dr. Hirschauer, a defendant anesthesiologist.

18. **BONATI**, who advertises himself on The Bonati Institute website as the "Chairman and Chief Orthopedic Surgeon at The Bonati Institute", holds a direct financial interest in, and is the sole shareholder of the following listed corporations and entities, all of which provided services arising out of the course of care and treatment and surgeries concerning the Plaintiff **PATIENT**, **PATRICK O'BRIEN**, by **BONATI**, and others. **BONATI** engaged in a course of self-referrals and self-dealings by unnecessarily referring or causing to be referred **PATRICK O'BRIEN,** to various medical providers, corporations and businesses at his Hudson, Florida medical campus, in a spider web of intra-related "**BONATI**-owned" and controlled

corporations, which have, on a continuing basis over the years, generated a multitude of unreasonable, excessive and unnecessary billings to an as yet undetermined number of *patients*, and targeted to patients, who have medical insurance, including Plaintiff, **PATRICK O'BRIEN**, and which are identified on the billings to United Healthcare Insurance as:

a. Gulf Coast Orthopedic Center, 7315 Hudson Avenue, Hudson, Florida;

b. Medical Development Corporation of Pasco County, 7315 Hudson Avenue, Hudson, Florida;

c. American Medical Care, Inc., 7315 Hudson Avenue, Hudson, Florida;

d. G.C.O.C. Rehabilitation, 7315 Hudson Avenue, Hudson, Florida; and

e. David R. Hirschauer, D.O.

f. G.C.O.C. Physical Therapy, Inc.

g. Alfred O. Bonati, M.D.

h. Mark J. Timken, M.D.

j. Bruce D. Moffatt, M.D.

Some of these corporations exist and others with similar names have been collapsed or assimilated before as an outgrowth of the Bankruptcy proceedings involving **Gulf Coast Orthopedic Center** referred to hereinabove. **BONATI** has caused to be created more than sixty (60) corporations within the State of Florida alone, and from his internet advertising, (which is materially and factually misleading and provides overly optimistic projections for the results of patient care at The Bonati Institute), patients from across the United States and from abroad (patients from other countries were included as Medical Malpractice Claimants in the Federal Bankruptcy court filing and arbitration referred to in paragraph 4 above).

19. **BONATI, P.A.**, is a Florida professional service corporation for profit, maintaining offices for the customary transaction of its business in Hudson, Pasco County, Florida, at all material times. **BONATI** is the sole shareholder in **BONATI, P.A. BONATI, P.A.**, was organized, exists and operates as a corporate vehicle for **BONATI** to practice medicine as his professional service corporation, and it is co-located with the other facilities and participants and parties on a common campus at 7315 Hudson Avenue, Hudson, Florida, at all material times. **BONATI, P.A.** employee **HIRSCHAUER** (an osteopathic physician) at all material times to **PATRICK O'BRIEN's** care and surgeries and these claims.

**Participants**

20. Gulf Coast Orthopedic Center provided unnecessary patient care and services as a result of referrals by **BONATI** and **BONATI, P.A.** and other **BONATI**-owned entities and corporations and health care providers having a business relationship or involvement with **BONATI** and **BONATI, P.A.**.

21. G.C.O.C. Rehabilitation provided rehabilitation services, and G.C.O.C. Physical Therapy, Inc., as a result of referrals by **BONATI** and **BONATI, P.A.**, and other **BONATI**-owned entities and corporations and health care providers having a business relationship or involvement with **BONATI** and **BONATI, P.A.**.

22. American Medical Care, Inc. (a Bonati-owned entity in Florida) (**AMERICAN**) hires and supervises staff in the areas of, and bills for, anesthesiology, neurology and physical therapy according to testimony that Dr. **BONATI** has given in William Clark, et al. v. Alfred O. Bonati, M.D., etc., et al. filed in the Circuit Court of Pasco County, Florida as Case Number;

51-2004-CA-002193-XXXX-WS (Division G) on March 16, 2007. Dr. **BONATI** is the sole shareholder of **AMERICAN** at all material times.

23. Medical Development Corporation of Pasco County, (**MDC**) is as Dr. BONATI has described in the Clark deposition of March 16, 2007, a surgical institution (i.e. a place to do surgery). Like the other defendant corporations, enterprises and associations-in-fact involving corporations, entities or businesses at the Hudson, Florida campus, this entity is 100% owned by Alfred O. Bonati, M.D.

24. Various other physicians employed by **BONATI, P.A.** or other Bonati-owned entities and corporations who provided care to Plaintiff **PATIENT** include Leonel Limonte, M.D., a neurologist, who BONATI utilized here to do the "initial evaluation of the Plaintiff PATIENT, and David R. Hirschauer, D.O., anesthesiologist and Dr. Tonina Campoli, M.D. (employed by American Medical Care, Inc. under employment agreement dated November 1, 2004), an anesthesiologist, together with Susan Brandt, M.D., also an American Medical Care, Inc. anesthesiologist employee provided additional evaluation and anesthesiology services to include epidural steroid or other multiple injections and anesthesia care to **O'BRIEN**.

25. **BONATI, P.A.** (fictitious name being **Gulf Coast Orthopedic Center**) is a Florida corporation **BONATI, P.A.** which also over the years has done business as G.C.O.C. Institute for Special Surgery of Joint Diseases, and purporting to be a comprehensive diagnosis, treatment and rehabilitation facility. At various times and from time to time, the activities and business of Gulf Coast Orthopedic Center, Inc. - Alfred O. Bonati, M.D., P.A. (**BONATI, P.A.**) has essentially in the name or form been conducted in whole or in part or in concert through various related units and entities, bearing the following titles or names, in addition to its own

name; Pain Control Center, Inc., G.C.O.C. Physical Therapy, Inc., Medical Imaging Center, Inc., Medical Development Corporation, Inc., Exercise Physiology Center, Inc., G.C.O.C. Internal Medicine, Inc. and American Medical Care, Inc. **BONATI, P.A.** provides administrative, accounting and other services to the various **BONATI** owned units and entities located on the campus at 7315 Hudson Avenue, Hudson, Florida and also employs Defendant Weksler under an employment agreement dated August 31, 2001 as well as the Defendant **HIRSCHAUER** (also an employee or agent) and too, the Defendant **BONATI**.

26. Dr. Leonel Limonte, a neurologist, provided pre-surgery clearance and various diagnostic tests and studies on the Plaintiff **PATIENT**.

27. **BONATI, P.A.** provides medical records upon application independently and houses the medical records facility, pre-dictated operative reports and chart notes, and transcription facilities, computer generated and proper releases and forms used by all Defendants and by all participants in the enterprise*(s)*. Additionally, medical charts and records for patients such as **PATRICK O'BRIEN** bear this heading "Gulf Coast Orthopedic Center" and are on their pre-printed form.

28. Medical Development Corporation of Pasco County **(MDC)** is the name of the ambulatory surgical center and facility where surgical and other services were rendered to Plaintiff **PATIENT** in 2004 and 2005 including surgeries performed by **BONATI** and by co-surgeon Weksler and by surgeon Bruce D. Moffatt, M.D. as performed on **PATRICK O'BRIEN** and also as performed on **PATRICK O'BRIEN** by Pain Management physician (anesthesiologist), **HIRSCHAUER**. Each of these physicians were acting in the course and scope of their employment with **BONATI, P.A.** or pursuant to a contract with one or more **BONATI** entities

including but not limited to **American Medical Care, Inc.** while caring for **PATRICK O'BRIEN** in 2004 and 2005. **MDC** is wholly owned by **BONATI**, who is an agent or servant or employee of **BONATI, P.A.**, and is a Bonati-owned business entity.

29. The Imaging Center at the **MDC/BONATI, P.A.** campus in Hudson, Florida, is wholly owned and controlled by **BONATI** and utilizes various radiologists to read films and to provide related services to include, for example for Plaintiff **PATIENT**, Dr. Mark Timken, MD (this independent contractor physician maintains an address of record in Leesburg, Florida with a Florida for profit corporation, Professional Radiology Associates, P.A.).

30. **Gulf Coast Orthopedic Center** and the involved doctors (including Brandt, Limonte, Moffatt, Weksler, and others) billed United Healthcare for care and patient management and for physician and other services including those provided by **HIRSCHAUER, BONATI,** Moffatt and Weksler rendered to Plaintiff **PATIENT** at what the Defendants refer to as **The Bonati Institute for Advanced Arthroscopic Surgery (SM for Service Mark)**, allegedly with Tampa Bay, Florida offices, Orlando, Florida offices and Amsterdam, Holland offices reflected on their letter head. Further, Defendants and each of them interchange this service mark, **The Bonati Institute for Advanced Arthroscopic Surgery** with the words **The Bonati Institute** (a fictitious name of **MDC**) and further refer to their facility as **Gulf Coast Orthopedic Center** (a fictitious name of **Bonati, P.A.**). Defendant entities and **BONATI** each utilize for advertising, marketing, and for promotion nationally and internationally the same website address of www.Bonati.com, a website that the Plaintiff **PATIENT** and his wife utilized over the internet on the World Wide Web to initiate and support their decision to seek out care in Florida for Plaintiff **PATIENT**. However:

a. There is no **Bonati Institute for Advanced Arthroscopic Surgery** and no **The Bonati Institute** and no **Gulf Coast Orthopedic Center** and no **Alfred O. Bonati, MD** actively practicing medicine in Orlando, Florida.

b. **The Bonati Institute for Advanced Arthroscopic Surgery** does not have free standing medical offices in Amsterdam, Holland, nor does **Gulf Coast Orthopedic Center** nor does **The Bonati Institute**.

c. **Alfred O. Bonati, MD** periodically travels to Amsterdam, Holland where he has admitted in deposition under oath that he sees patients in Amsterdam hotel rooms and, on occasion, sees patients in local physicians offices, although he has no active license to practice medicine in Holland, and only uses this connection to attract foreign country patients for his Hudson, Florida facility in the United States (approximately 1-2% of **The Bonati Institute** patient load according to Dr. **BONATI**'s testimony in Fla. Stat. court case filed against him in recent years).

d. The forms HCFA-1500 (Medical Universal Billing Form), submitted by Defendants or on their behalf and by each participant, and for other **BONATI, P.A., AMERICAN** and **MDC** doctors, and were submitted to United Healthcare for **PATRICK O'BRIEN** for payment. (See, for example, those attached to Appendix "B"). As such, and as contained on the form HCFA-1500, the signature of a physician or a supplier declares that under penalty of perjury, that the facts alleged are true to the best of that signatory's knowledge and belief, and further, that the treatment and

services rendered were reasonable and necessary with respect to the bodily injuries sustained. In reality, the treatment and services rendered by Defendants and by others at **Gulf Coast Orthopedic Center/The Bonati Institute/MDC/Bonati, P.A./AMERICAN** and related entities on the Hudson, Florida campus were not reasonable and necessary with respect to any bodily injury sustained by Plaintiff **PATIENT**, and caused new injury and aggravated any existing injury.

31. Gulf Coast Orthopedic Center renders physical therapy services upon prescription of **BONATI** or other on-site health care providers and the defendants upon cross-referral between **BONATI** entities and physicians.

32. For Plaintiff **PATIENT**, Dr. Susan Brandt, MD (is no longer practicing anesthesiology as an employee of American Medical Care, Inc.) and Dr. Tonina Campoli, MD, also then employed by **AMERICAN,** participated in providing anesthesiology services for the various surgeries performed on Plaintiff **PATIENT** and provided professional services as surgical anesthesiologists for **BONATI** and for surgeons, Weksler and Moffatt, who operated on patient **O'BRIEN** and others in operating rooms owned, operated, staffed and equipped by Medical Development Corporation of Pasco County, Inc. (**MDC**), a wholly owned **BONATI** corporation.

33. Weksler, at all material times, is the Chairman of the Department of Surgery at The Bonati Institute according to testimony given by Dr. **BONATI** in the Clark case on March 16, 2007. Neurosurgeon Moffatt operated at all material times as the surgeon within the Department of Surgery at The Bonati Institute under written contract which contained a performance bonus provision.

34. Cecelia O'Ryan serves as business manager for each of the defendant entities and for each of the corporate participants in addition to being the overall administrator.

35. **BONATI** and Cecelia O'Ryan are, as Dr. BONATI has testified under oath in Clark, upper level management at The Bonati Institute/Gulf Coast Orthopedic Center complex in Hudson, Florida.

36. Leonel Limonte, M.D., was the neurologist otherwise operating as an internal medicine physician and employee of **BONATI, P.A.**, who examined and provided care for **PATRICK O'BRIEN** within his field of medical specialty.

37. **Bonati**, and **Bonati, P.A./MDC and AMERICAN**, The Bonati Institute campus Pain Control Unit provides immediate and subsequent post-operative care **Hirschauer**, DO, a defendant herein, operates the Pain Control/Pain Management services at the **MDC** Special Procedures Room on the Hudson, Florida campus and provided such care and steroid injections to **PATRICK O'BRIEN**.

38. The internet website, utilized by the Defendants individually and collectively (18 USC § 1343) to attract new patient business, and to reassure medical insurance providers such as United Healthcare Services T-Mobile Group Policy, contains false and misleading information, posted knowing so that others who view the site will rely on it to their detriment.

39. Cecelia O'Ryan, who is the sister of **BONATI,** effectively serves as the Chief Operating Officer, coordinator, and the Director of the overall day-to-day operations and finances of the on-campus health care providers and enterprises, facility and entities. Cecelia O'Ryan is referred to as the "Administrator". She is within the decision-making structure, as is **BONATI,** for the entire **The Bonati Institute/G.C.O.C./MDC/Bonati, P.A./AMERICAN** complex and its

component entities. It is she who coordinates activities and finances, (administratively and economically), of the various entities, and serves as the Chief Financial Officer, Chief Operating Officer, coordinator and director. All participants including the individual participants report to **BONATI,** through O'Ryan. She is responsible also for the successful operation and use of the computer system(s) which generates "canned-pro forma" pre-dictated medical charts and records on patients including Plaintiff **PATIENT** and for the medical records department which is, (despite the use of pre-dictated reports of operations which are created before the operations occur regardless of the procedures or findings at surgery), charged by Florida and Federal law with providing complete and accurate medical charts and records on each patient in Florida. She, in turn, on repeated times and from time to time, over the course of the years and currently, reports to **BONATI,** and is responsible overall for the successful day-to-day operation of the entire enterprise*(s)* and of **G.C.O.C./The Bonati Institute/MDC/Bonati, P.A.**. While the only person to whom she reports above her within the overall enterprise(s) structure is **BONATI** himself, Cecelia O'Ryan has below her a series of case coordinators and department heads responsible for having operational day-to-day responsibility for the underlying participants; however, these coordinators are given directions by **BONATI** and other participants through her. Cecelia O'Ryan periodically and from day-to-day compiles financial records and accounting to present such information to **BONATI,** on a routine and serial basis at the top of the enterprise(s).

40. Participants, each Defendant and all participants as co-conspirators, actually knew of the general nature and dimension of the conspiracy beyond their personal involvement, and knew, or should have known of the scope and that their acts furthered the affairs of the

enterprise*(s)*. Furthermore, no less than **Bonati** himself has further acknowledged under oath by sworn deposition in the Clark case in 2007 that:

> All employees who work at **The Bonati Institute/Gulf Coast Orthopedic Center** and their related entities are well aware of his long standing and repeat Florida medical licensing problem(s) and the related verdict(s) and Florida Board of Medical Discipline(s) and of the suits and fraud/RICO/medical malpractice verdict in Ammirati that brought him to file personal bankruptcy in 1996 (which he thereafter dismissed for himself personally) and of the Bankruptcy problems of the predecessor Gulf Coast Orthopedic Center (Alfred O. Bonati, MD, P.A.) referred to hereinabove.

## IV

## SUMMARY

41. As alleged herein, during the relevant *times, **BONATI*** and **BONATI, P.A., AMERICAN** and **MDC** and their employees, including Defendant **HIRSCHAUER** conspired with one another *and others* to convert the property of the Plaintiff Patient, **PATRICK O'BRIEN**, as a targeted patient, to defraud him and to cheat him, and to engage in numerous other illegal acts. As part of the scheme to obtain assets and property from and through him, and to engage in other illegal acts, Defendants, and each of them, falsely represented to him and to United Healthcare Services that he was in need of substantial permanent physician and other health care provider services, all of which could be rendered by Defendants or by other **BONATI**-related participants and employees of **BONATI** owned entities. Defendants falsely represented to the Plaintiff also that his medical conditions were serious and all related to matters that predated his initial admission as a patient at The Bonati Institute in 2004, and that he, **PATRICK O'BRIEN**, would require "*...You may need five (5) or six (6) surgeries to correct the problem...*" and further injections of steroids and other dangerous and painful medical procedures, which ultimately were performed by defendants and by others at **AMERICAN, The Bonati Institute** or at **MDC.**

Sadly, because of the unnecessary and substandard medical care and treatment and the magnitude and extent of the procedures performed, any damages or condition of **PATRICK O'BRIEN** were enhanced and aggravated and further:

a. Series of events involving unnecessary surgeries and care and excessive injections of steroids which lead to the life threatening situation and chronically terminal disease.

b. The medical charts demonstrate that eight (8) Epidural Steroid Injections and one (1) SI Steroid Injection were given to **O'BRIEN** within six (6) months and five (5) of those were given within three (3) weeks.

c. Injections of 120 mg of Triamincilone was administered to **O'BRIEN** nine (9) times.

d. The injections of steroids triggered a severe adrenal crisis in Plaintiff **PATIENT O'BRIEN** causing his crotisol level to drop to 0.3, essentially completely depleted.

e. Defendants care caused crotisol replacement therapy to be necessitated.

f. Plaintiff is not expected to recover his normal adrenal function ever.

g. Plaintiff has subsequently been diagnosed as having secondary chronic adrenal deficiency caused by exogeneous steroid use.

h. Bone density scans demonstrate that Plaintiff **PATIENT** has severe osteoporosis, most probably as a direct result of exogeneous steroid use at The Bonati Institute caused or contributed to by one or more of the Defendants.

i. Plaintiff's adrenal disease caused immune and inflammatory response problem.

j. The excessive steroid caused calcium to be taken from Plaintiff's bone and out of his urine causing renal calculus to form in his kidneys.

42. It was part of the scheme to defraud and to cheat the Plaintiff, **PATRICK O'BRIEN**, and to take his property, money, to cause Plaintiff **PATIENT** to owe Defendants, and each of them and their related entities within the enterprise(s), and other participants, large sums of

money for unnecessary medical and surgical care and services, and that the financial burden upon the Plaintiff was so great that he, **PATRICK O'BRIEN**, would be caused to elect to initiate his rights as a covered employee under the United Healthcare policy to partially satisfy his overall losses and his financial obligations to **BONATI, BONATI, P.A./MDC/AMERICAN** and to their employees and related care providers and businesses located at **The Bonati Institute/Gulf Coast Orthopedic Center** facility and grounds in Hudson, Florida.

43. It was further a part of the scheme to defraud and to cheat the Plaintiff and to take his property, that the participants and the Defendants would and did agree and conspire together and between them and/or among themselves and others, and devise and participate in a plan of deceit and cheating, whereby they would and did abuse their respective professional medical obligation(s) to the Plaintiff, **PATRICK O'BRIEN**, to provide him only reasonable and necessary medical and surgical care and treatment, in that they used false and fraudulent pretenses, representations and promises, calculated to deceive persons of ordinary prudence and due care, by making non-disclosures of material information, concealments of actual fact and material misstatements of fact, as to his medical well being. Defendants alone, effectively and together, and with others on-site took advantage of Plaintiff **PATIENT**'s lack of knowledge about such exquisite medical procedures, signs, symptoms, reasonable needs and testing to their own financial advantage and exploited **PATRICK O'BRIEN** as a patient.

44. The Defendants, and each of them, acted unlawfully, intentionally and willfully with intent to defraud, that is, knowingly and with specific intent to deceive in order to cause financial gain to themselves (some defendants had "productivity bonuses" above their salary for doing more medical procedures whether or not they were required for that patient), and to convert

for themselves and their use, the property of the Plaintiff **PATIENT**, which were substantial funds (exceeding $50,000.00) out of his own pocket, also being his specific funds. As such, the Defendants, and each of them, converted the property of the Plaintiff, **PATRICK O'BRIEN**, to the use and benefit of themselves and others, and to the detriment of the Plaintiff who, in part, was forced to pay, out of his own personal monies, his specific property, for the unnecessary, unreasonable and excessively charged medical and surgical care and treatment rendered or caused by Defendants, and other participants within the enterprise. Plaintiff, **PATRICK O'BRIEN**, also incurred substantial out of pocket financial losses for transportation from Texas to and from Defendants' care in Florida to make scheduled appointments and to undergo repeat surgeries and for medical interventions and for housing and related expenses during 2004 and 2005 and thereafter **O'BRIEN** incurred losses occasioned as a result of Defendant's care, including travel for care in other states.

45. In carrying out the scheme, **BONATI,** and **BONATI, P.A.**, (on behalf of themselves and the other Defendants and Participants) engaged in conduct in violation of Federal law, as follows:

a. Mail fraud in violation of 18 U.S.C. §1341; wire fraud in violation of 18 USC § 1343; by internet and by intrastate and interstate use of defendants' 1-800 Toll Free telephone number and by toll calls exchanged between the State of Texas and the State of Florida concerning plaintiff's care and treatment at the Hudson, Florida campus.

b. As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and to cheat and to take

Plaintiff's specific property, the Defendant and participants, on numerous occasions, used and caused to be used, mail depositories of the United States Postal Service, by both placing and causing to be placed, mailable matter in said depositories, and by removing and causing to be removed, mailable matter sent to them from said depositories, all in connection with the scheme and artifice to defraud and to wrongfully obtain money as proscribed and prohibited, not only by 18 U.S.*C.* §1341, all of which were related in purpose to the scheme to defraud Plaintiff and to cheat him and others of specific property, and to generate excess profits for the Defendants and for the participants within the enterprise, all of whom intentionally and with specific intent to defraud, participated, causing injury to the property of the Plaintiff and to other targeted patients who incurred expenses and paid excess medical bills by themselves out of their own monies and out of monies of third parties, including third party insurance carriers and damaged others.

46. **BONATI, BONATI, P.A.**, and the other participants in the enterprise(s), participated in the scheme to defraud and to cheat Plaintiff, **PATRICK O'BRIEN**, of his specific property, his money, and ultimately, the monies of others, and used the U.S. mail in furtherance of that scheme. The mailings sent out by or received on behalf of Defendants and the participants are identified as a minimum by **Appendix "B"** attached hereto and incorporated herein (mailings between Texas and Florida). **BONATI,** and **BONATI, P.A.**, and all participants within the enterprise(s) or associated-in-fact with the enterprise(s), had knowledge or should reasonably have known that the use of the U.S. Mail would follow in the ordinary course of business, and that the

use of the United States Mail in furtherance of the scheme could reasonably be foreseen, even though it may not have been actually intended. (See also **Appendix "B"** in this regard.)

47. Each of the Defendants aided and abetted, within the meaning of 18 U.S.C. §2, and conspired with and between themselves and all other participants within the enterprise(s) in committing these illegal acts, and each Defendant agreed to the operation of the overall scheme, which was designed to place excessive and undue economic and emotional pressures on the Plaintiff **PATIENT** who, in good faith, inundated with false and misleading representations about his healthcare needs and with excessive **BONATI**-controlled participants in the enterprise(s) who had issued excessive medical bills and expenses arising out care said by them to be related to any pre-existing problems would be forced to pay his own money, expend his property, and to seek insurance benefits from others, to which he was entitled, all as a result of unnecessary and unreasonable billings and overtreatment at an excessive cost by **BONATI,** and by other Defendants and participants, all at the direction of **BONATI,** and **BONATI, P.A.**, and the association-in-fact enterprise in the conduct of an enterprise(s) through a pattern of unlawful activities constituting of more than two acts or incidents of unlawful activity within a ten (10) year period or five (5) year period of time, as that term "pattern" is defined by 18 U.S.C. §1961(5) or by *Section* 772.102(4), Fla. Rev. Stat.

48. Defendants, and each of them, in cooperation and conspiracy with themselves and with the other participants, caused Plaintiff, **PATRICK O'BRIEN**, to become heavily indebted for defendants' bills for medical care and treatment so that he had to seek out and elect to have United Healthcare pay, in whole or in part, and to a considerable extent, advance monies on his behalf, all arising as a result of excessive bills and the economic pressure brought by such bills, as

engendered by the conspiracy and scheme. The acts herein alleged, including the reported use of the United States Mail, had the same or similar purposes, intents, results, accomplices, patients as victims, and methods of commission, and were otherwise so interrelated by distinguishing characteristics, so that they are not isolated acts or incidents. The monies flowed to Defendants, and to each of them, and to the participants within the conduct of the enterprise(s), so that patients before and to date continuing, were handled, unnecessarily referred and excessively billed and over treated wrongly, as was Plaintiff PATIENT, **PATRICK O'BRIEN.** Through these fraudulent acts, Defendants and the participants received the same results of receiving excessive profits not reasonably earned, utilizing as their target the same victims who were patients seeking out in good faith, medical care and treatment for various medical and orthopedic and neurological deficits or conditions, whether medically temporary or permanent.

49. The manner in which the medical and surgical care and treatment of Plaintiff Patient, **PATRICK O'BRIEN,** was undertaken by the Defendants, and by each of them, and by the participants within the enterprise(s), including the use of the United States Mails, are part of the regular way of doing business (confirmed additionally in 2006 and 2007 by **Bonati** in his deposition(s) in the Pasco County, Florida, Circuit Court cases filed by Patricia Shaw-Caillouet and by William F. Clark also) which continues to date, and which is attributed to the Defendants and participants operating as a part of a long-term association existing to achieve financial benefit for them.

## V

## NARRATIVE OF FACTS

50. **PATRICK O'BRIEN** came under the care and treatment of Dr. Perry, **BONATI,** Weksler, Moffatt **and HIRSCHAUER.** On the initial office visit, **PATRICK O'BRIEN,** after having been seen by Dr. Limonte, presented for an MRI discussion with Dr. **BONATI. BONATI** announced the patient would have to immediately submit to a brand new series of expensive MRI filming at the Hudson, Florida Imaging facility on campus (owned and controlled by **BONATI**) and **BONATI** or others on his behalf immediately scheduled these MRI films and other radiographic tests and medical studies, which were undertaken at great expense and which took virtually an entire day of **PATRICK O'BRIEN**'s time to complete.

51. As noted herein, **BONATI** alone or with Weksler as *co-surgeon*, (a shared-responsibility and "enhanced billing" terminology) performed a series of six (6) separate surgeries on the various parts or areas of the cervical and lumbar spine of Plaintiff **PATIENT, PATRICK O'BRIEN.** These procedures were performed on an outpatient basis at the **G.C.O.C./The Bonati Institute/MDC** complex as neither **BONATI** or Weksler nor Moffatt had active hospital privileges at any local area hospital or staff privileges to admit and treat patients or to perform surgery upon them in a hospital.

52. The procedure(s) performed by **BONATI** and Weksler and Moffatt upon Plaintiff **PATIENT, PATRICK O'BRIEN**, were but one of a series of related procedures performed by the Defendant surgeons, **BONATI** and Weksler and Moffatt on various locations of the body on this patient and in the course of their medical practice or other practices, which are experimental in nature or not accepted by the mainstream conventional medical community nationwide and are procedures invading the patient's body against the grain of conventional medical wisdom in 1996 and to date.

a. **BONATI** sat through a jury trial before a Federal Judge and jury in Ammirati for several weeks in 1996 and heard physicians and surgeons (including those from Harvard, and The Lahey Clinic and from Tampa Bay) criticize his and his related-entities' care plan and surgery, as well as the "Patented Bonati Procedures" utilized by him to treat patients.

b. **BONATI** has been present himself in the past, when the Past-President of the Florida Orthopedic Society, at a Florida medical meeting openly criticized Bonati's methodology and the operation(s) by BONATI in his Hudson, Florida facilities and criticizing the surgical operations Bonati and others at his facility utilized on unsuspecting patients; (all to no avail).

c. Bonati has continued to practice medicine and surgery and treat patients and run his practice the same way he has since 1985 to 2007 according to his March 16, 2007 deposition under oath taken in Clark.

53. **BONATI** trained Weksler, (who is actually a General Surgeon by training previously practicing general surgery in Texas, and not an Orthopedic Surgeon traditionally trained to do spinal surgery or evaluate spinal patients) as to how to perform spinal surgery on a patient where Dr. Weksler was the sole surgeon or as a co-surgeon, primarily at the level of a patient's lumbar spine, utilizing the *Bonati Procedures*.

54. **BONATI** as well as **HIRSCHAUER** who each were well aware of the long standing controversies over his techniques and surgical practices and care, having received past frequent negative comments by other comparably or superiorly trained orthopedic, neurological or other health care providers and surgeons who had been called upon to review defendant's

patient charts and records, his surgeries, and his procedures for an independent evaluation at the request of patients and parties such as tortfeasors or third party Insurance Carriers. Indeed, insurance carriers had on prior occasions refused to approve payment for such **"BONATI** procedures" based upon contrary second opinions obtained from outside medical/surgical independent examiners, yet **BONATI** proceeded with the surgery in 2004 and 2005 reportedly upon Plaintiff **PATIENT** despite being thus placed on notice for many years that his surgical indications, practices and protocols and those of related staff and physicians were highly suspect.

55. Plaintiff, **PATRICK O'BRIEN,** was unaware of any criticism or contest in the medical community, or of the medical license challenges over decades by the State of Florida Board of Medicine over **BONATI'S** procedures, treatment or patient care which then or has in the past existed. Plaintiff, **PATRICK O'BRIEN**, having reviewed the BONATI website (www.Bonati.com) (18 USC § 1343) and having spoken long distance by telephone from Texas with employees at The Bonati Institute and Gulf Coast Orthopedic Center campus staff in Hudson, Florida and, later traveled to Florida and visited the facility and spoken with **BONATI** and Dr. Perry and others there in Hudson, Florida. **O'BRIEN** was unaware of any contest or level of criticism of Dr. BONATI's procedures, treatment or care which then existed. **O'BRIEN** ultimately submitted himself in good faith to repeat surgeries by **BONATI** and by other surgeons at **The Bonati Institute/GCOC** and to other unnecessary care and dangerous, excessive and unnecessary procedures provided by **HIRSCHAUER**.

56. At all relevant times, there was no reasonable or reliable medical indication, sign or symptom(s) for the procedure(s) and for the operation(s) performed on Plaintiff, **PATRICK O'BRIEN**, by **BONATI**, by a **BONATI**-related surgeon or by **HIRSCHAUER**, all of which

was known to them or should have been known by them (to include **Bonati** personally). These procedures were part of the so-call "patented" **BONATI** procedures and related care which Defendant **BONATI** championed and marketed in misleading and deceptive ways including by internet website to his patients, including Plaintiff **PATIENT, PATRICK O'BRIEN**.

57. In a domino fashion, **HIRSCHAUER**'s multiple epidural steroid and related pain management procedures were likewise over utilized or unnecessary and ill-advised in violation of F.S. 766.111. All of these procedures performed by these defendant physicians and other staff surgeons carried with them considerable patient risk including structural body damage or other harm and unacceptable and unappreciated by any patient.

58. At all relevant times, **BONATI** and the other Defendant physician and participants, intentionally or negligently exaggerated or misdiagnosed **PATRICK O'BRIEN**'s pathology in order to attempt to justify a course of expensive and aggressive surgical treatment and other surgical or related care which was not medically indicated. Indeed, **BONATI** likewise pressured or set the standard to follow for physicians, pain management, and surgical physicians employed by one or more of his wholly owned entities including the defendant corporations herein.

59. **BONATI** championed and set up a program for surgeon(s) and physician(s) at **The Bonati Institute/MDC/G.C.O.C. /AMERICAN** whereby performance bonuses were paid above salary, inciting the physician employees or agents such as **HIRSCHAUER** and Weksler and Moffatt to do more procedures and to earn more money, irrespective of patient conditions or need for care.

60. **BONATI** intentionally or negligently failed to employ a conservative and professionally considered course of care and treatment upon Plaintiff PATIENT, **PATRICK**

**O'BRIEN** and rushed and championed Plaintiff **PATIENT** to surgery on his neck and on his low back and after-surgery care, "time after time" and had him submit to pain management procedures by **HIRSCHAUER** and also to Weksler and Moffatt for surgery, all in an effort to submit Plaintiff PATIENT, **PATRICK O'BRIEN,** to a more lucrative (for Defendant's) and medically aggressive surgical procedure(s) and care plan, without regard to weighing the relative risks and benefits and injury to which he and the other physicians and agents who acted under his direction and control thereby exposed the Plaintiff, **PATRICK O'BRIEN**.

61. **BONATI** performed his so-called "no surgery - surgery" (minimally invasive through dilator tubes) upon the Plaintiff and other patients under his care, (i.e., he performed what he describes as minimally invasive surgical procedures on the human body on so-called pathology which was of relatively little or no anatomical, clinical or surgical importance whatsoever or otherwise "normally and naturally occurring" in the body without clinical significance). While **BONATI** and his physicians utilize this "no surgery - surgery" to boast a virtual "zero" complication rate, in fact the procedures employed by him pose the clear potential and reality of latent future damages to each patient, in that it impairs the strength of the patient's vertebral column, and related structures, which are thereby set up for future instability or collapse. This "no surgery-surgery" ploy is utilized by **BONATI** to exploit the psychological placebo effect upon his patients who undergo his surgery and those of staff physicians at **The Bonati Institute/GCOC** (as many would reason simply achieve placebo effects with a mere passage of time), and the outgrowth of care thereafter to its greatest physical and emotional bounds. After surgery, the patients are injected with numbing agents and they are asked to sign patient letters of recommendation about The Bonati Institute and how "pain free" they are after surgery there, all

which **BONATI** and **BONATI, P.A.** utilize on their website (www.Bonati.com) to entice new patients to come to their facility for surgery and care.

62. In the course of his care and treatment of the Plaintiff, **BONATI** conducted or caused to be conducted various unnecessary diagnostic tests, studies and other medical or surgical tests and procedures upon the Plaintiff, **PATRICK O'BRIEN**, for which excessive and unnecessary charges were made.

63. On numerous occasions throughout the course of **BONATI'S** treatment of **PATRICK O'BRIEN, BONATI**, and/or his agents, servants or employees or others on his behalf or direction, requested Plaintiff to sign or submit insurance claim applications forms (which he did) for purposes of allowing the **BONATI**, or related **BONATI**-controlled businesses or individuals, including the Defendant physicians and entities, to file claims for insurance benefits with **O'BRIEN**'s insurance carrier, United Healthcare, and to seek reimbursement for medical bills charged by **BONATI, BONATI, P.A.**, and by other Defendant medical providers, businesses or entities in the "self-referral network" identified herein, this despite the fact that **BONATI** and the Defendant physicians knew or should have known that the surgery and other treatment(s), procedure(s) and diagnostic testing(s) provided by him or the physicians and entities to whom he referred, or who cross-referred, the patient was medically unnecessary, and that excessive charges were billed, and despite the fact that **BONATI** knew or should have known that the insurance claim forms and bills and certain correspondence and records contained false, incomplete or misleading information regarding material facts regarding such treatment and medical chart and record and surgical reports of **PATRICK O'BRIEN**, the text and content of which was *prepared*

*before* **PATRICK O'BRIEN** was ever a patient of The Bonati Institute/MDC/Bonati, P.A. and under Defendant's care.

64. On or about April 2004 through 2005 and thereafter, **BONATI/BONATI, P.A.**, and **HIRSCHAUER** and/or their employees, agents or servants, and other providers in the self referral network identified herein, deposited or caused to be deposited in the U.S. Mails various writings and billings addressed to Plaintiff, **PATRICK O'BRIEN**, and various writings and billings addressed his insurance carrier for the Plaintiff, **PATRICK O'BRIEN**, in an attempt to collect payment from **PATRICK O'BRIEN** and to process insurance payments for the above described course of treatment and care to Plaintiff rendered by Defendants and other entities within the self-referral system. As a result thereof, **BONATI/BONATI, P.A.** and other corporations, such as **G.C.O.C./MDC/AMERICAN**, within his self-referral system collected payment for medical bills from the insurance carrier for **PATRICK O'BRIEN** alone, and these were related expenses to those paid by Plaintiff himself out of his own money.

65. In the course of his care and treatment of **O'BRIEN**, ***BONATI*** engaged in and initiated a course of self-referrals and self dealings by unnecessarily referring the Plaintiff to various medical providers, and Bonati-owned corporations and businesses in a spider web of intra-related corporations in which he held a direct financial interest as the sole shareholder or otherwise, including but not limited to the following entities which generated a multitude of excessive and unnecessary billings to patients and Plaintiff, **PATRICK O'BRIEN**:

66. The above referenced **BONATI** entities and businesses are set up at a central location (a map of which is attached as part of Appendix "B") at "G.C.O.C.", Gulf Coast Orthopedic Center/The Bonati Institute, 7315 Hudson Avenue, Hudson, Florida in a "crystal

palace" of offices designed by **BONATI** to create an aura of medical success, when in fact, the palace represents nothing more than a mirrored maze of offices reflecting the financial success of a physician gained by the exploitation of unwitting patients and their insurance carriers or other third party payors who fell victim to his scheme of unnecessary surgeries, care and referrals. The hallmarks of this palace include the following:

- A giant billboard of a marquis type design on the exterior of the premises for the benefit of passing motorists;
- Mirrored walls;
- Revolving models of various body parts such as knees and hands on pedestals within the building;
- A juice bar open to patients serving free juice and cookies;
- A chapel (currently serving as a waiting patient computer room);
- A movie theater or auditorium for showing surgical and medical films, also used in lectures and marketing;
- Physician "shingles" posted throughout the halls of the building, implying the presence of other unrelated physicians and medical providers;
- Manicured gardens with self-congratulatory monuments to **BONATI** and others;
- Numerous medical certificates of nominal or no real significance posted in prominent locations throughout the building;
- (**BONATI** has, over the years, claimed "Board Certifications" from four organizations, none of which enjoy recognition by the American Board of Medical Specialties, and at least one of which he founded.) This is in violation of Florida Statute 458.221(LL)

67. In furtherance of the duplicitous patient marketing and business scheme(s) described herein, and to further the false aura of medical expertise and specialization designed to lure patients to and retain them in his self referral scheme for his and his wholly owned entities

financial benefit, **BONATI** also created categories of physicians within his self referral system which are generally unheard of in the conventional medical community. For example, a physician (Dr. Michael Perry who treated **PATRICK O'BRIEN**) who **BONATI** refers to as an "orthopedic internist." In reality, there is no such specialty of Internal Medicine recognized by the American Board of Internal Medicine, Inc., (the certifying organization within the field of Internal Medicine), nor does said Board issue any certification in such a sub-specialty or any certification of added competence in such a sub-specialty.

68. The above described referral scheme was designed by **BONATI** to create a "domino effect" of referrals and billings within the **BONATI** entities, as one referral triggered a sequelae of other referrals within the system. This intra-related medical referral system amounts to nothing more than a "pinball machine" of medical practice(s), where a patient bounces off one **BONATI** owned and controlled medical post after another in the scheme, with each bounce lighting up new "points" for separate billings, all ultimately for the economic benefit of **BONATI** and defendants and others at **G.C.O.C./The Bonati Institute/MDC/AMERICAN**.

69. In connection with the activities giving rise to this action, the Defendants, and each of them, acted with malice, intent and knowledge, and a wanton and reckless disregard for the rights of the Plaintiff and of other targeted patients over the years and to date who received comparable care consistent with the basic scheme of the enterprise(s), and the Defendants, and the enterprise(s) participants' customary manner of doing business, which continues.

70. During the relevant times, the "enterprise(s)" as defined herein were engaged in intrastate and interstate commerce, in that they billed for and collected monies back for medical

and surgical care and treatment rendered to various patients, which was unnecessary, unwarranted, was the result of overtreatment, and was excessively and unnecessarily billed.

71. At all relevant times, in connection with the activities giving rise to this action, the Defendants, and each of them, conspired with each other and with other participants within the enterprise*(s)*, to engage in the various activities set forth herein, not only with regard to Plaintiff, **PATRICK O'BRIEN**, but in regard to an as yet unknown number of other patients who consistently received comparable courses of unnecessary and unreasonable medical and surgical care and treatment at the Hudson, Florida facility at the hands of **BONATI, BONATI, P.A./HIRSCHAUER** and one or more "**BONATI**-related" businesses (such as **MDC**) who are participants, and aided and abetted one another in unlawful activities all as proscribed and prohibited by law as set forth herein, and conspired to do so as proscribed and prohibited by *18 U.S.C. §§1962(c), 1962(a), 1962(d) to (c), §1962(d) to (a),* as well as *Sections* 772.103(3), 772.103(1), 772.103(4) to 772.103(3), 772.103(4) to 772.103(1), Fla. Rev. Stat. and F.S. 766.111. Each Defendants agreed to the operation of the conspiracy to defraud and cheat patients and others of dollars, and to cause the patients, such as **PATRICK O'BRIEN**, to expend personal monies, his specific property, for long distance telephone calls, his own medical care, and for transportation on a repeated basis to and from the "**BONATI**" facility, **The Bonati Institute/G.C.O.C./MDC/AMERICAN** in Hudson, Florida, for unwarranted, unnecessary and unreasonable care and treatment and medical appointments, which ultimately, Plaintiff, **PATRICK O'BRIEN**, would pay for in whole or in part, thereby damaging and causing a loss to his property.

72. Each of the participants identified hereinabove, and the Defendants, and each of them, as co-conspirators, and while aiding and abetting the enterprise(s) herein alleged, were interdependent and relied upon one another to provide each other patients on a continuing basis consistent with the scheme, seemingly independent modalities of care, treatment or surgery which, would then trigger referral to another participant or Defendant for care, allowing for each participant to utilize individual patient appointments, bills for such patient appointments, and then pass the patients on to the next Defendant or participant member of the enterprise*(s)*.

73. There are several enterprises operating and existing at the G.C.O.C./The Bonati Institute complex in Hudson, Florida, where each of the participants, at all relevant times, are located, including contiguous, connected and free standing buildings. These include the association-in-fact of **BONATI, BONATI, P.A.**, and the other participants and related defendants and entities more fully identified hereinabove and hereinbelow ("The Association").

74. Each of these enterprises continues through to date, and further threaten to continue perpetually. Each of the corporate participants have unlimited duration as for-profit corporations and are incorporated in the State of Florida, and allowed by articles of incorporation and by the issuance of certificates of incorporation, to exist perpetually into the future.

75. Each of the viable enterprises has direct access and indirect access to a steady flow of patients of all ages who have varying levels of complaint, some temporary, as well as to patients who have congenital or acquired pathology as a result of normal aging or other normal human growth and development. Each Defendant and enterprise(s) has a clear opportunity to practice its scheme and commit fraud, as alleged hereinabove, on all or certain of these patients, such as

**PATRICK O'BRIEN**, who present, or who are acquired or referred for care to each enterprise herein alleged, including the association-in-fact.

76. The association-in-fact of **BONATI/BONATI, P.A.,** and the other physicians and related entities identified as participants, has been ongoing from time to time and has continued since at least approximately 1985 in various business names and identities. It exists separate and apart from the pattern of unlawful activities, and is an ongoing organization of which the titular head is **BONATI.** The association-in-fact enterprise, as noted, further includes participants Cecelia O'Ryan who, while she reports to **BONATI,** individually, serves as the Chief Operating employee for the G.C.O.C./Bonati, P.A./MDC operation in Hudson, Florida, where the participants are housed and operate their scheme and conspire. As Administrator, Cecelia O'Ryan handles all matters of administration and finances, and manages the ongoing business of the organization, leaving only the decisions concerning matters of medicine to **BONATI.** The members of the association-in-fact function as a continuing unit, as identified by the decision-making structure. Daily management of the association-in-fact is by Cecelia O'Ryan, who is, accordingly, in charge of those activities for all participants within the association-in-fact enterprise.

77. Within the association-in-fact, representatives of all participants, or the participants themselves, report on all administrative and financial matters to Cecelia O'Ryan, as do the legal departments, dictation department, medical records department, education department, word processing department, statistics department, public relations department of G.C.O.C./The Bonati Institute.

78. **BONATI,** himself, has in depositions, under oath referred to the association-in-fact enterprise and method and progression of patients through the steps of care at the G.C.O.C./The Bonati Institute, campus in Hudson, Florida, as "The System".

79. Each of the individual members of the association-in-fact, and each entity actually involved or related, function as a continuing unit within their own corporate or individual structure.

80. Internally, for the specific day-to-day operation of their business purpose in providing certain kinds of medical care, attendance, treatment or surgery to a patient, such, for example, as to a specific modality of physical therapy or pain management, Defendants rely and operate by their own internal decision-making structure.

81. This structure is less formal than the structure of the overall association-in-fact headed by **BONATI**, which is managed by Chief Operating Officer, Cecelia O'Ryan. Each of the various corporate participants have separate corporate existence and are Florida for-profit corporations performing seemingly different and individualized medical care, attendance, treatment in various fields, or surgery, or providing a facility to perform those acts.

82. The structure of "the system" for treating the Plaintiff and other patients is four (4)-tiered, identified from top to bottom in the following order:

a. **ALFRED O. BONATI, M.D.**

b. Cecelia O'Ryan

c. Multiple "case managers"

d. Individual corporations separately billing for their own services, and those physicians they employee including the participants in the association-in-fact that constitutes an enterprise.

e. Individual physicians and staff. (Including the defendant physician Hirschauer)

83. ***THE ASSOCIATION*** shared common purposes, exhibited distinctive divisions of responsibility, existed independently of the pattern of unlawful activity, and continued as an economic unit with the same participant members at its core during the period of time starting in approximately 1985 through to date and continuing, according to testimony solicited from Dr. Bonati in 2007 by deposition.

84. Each participant member was operational at all relevant and material times, including during the period of time when **PATRICK O'BRIEN** was a patient of ***THE ASSOCIATION***, and of **BONATI, P.A.** and of all defendants.

85. Each enterprise was engaged in interstate and intrastate commerce during the relevant times, and the activities of each enterprise effected interstate commerce, as well as intrastate commerce, during those times.

86. Defendants, and each enterprise(s), provided medical and surgical service and attendant care to persons who were residents of the State of Florida and residents of states other than the State of Florida, such as Plaintiff **PATRICK O'BRIEN** (Texas), and from other countries.

87. In furtherance of their business activities, Defendants, and each of them, or others on their behalf contracted with and purchased from vendors located in states, including the State of Florida, and states other than the State of Florida, including equipment and supplies that were delivered to the offices located generally at the G.C.O.C./The Bonati Institute facility in Hudson, Florida, from those other states by means of interstate transportation, and further received products

from within the State of Florida, delivered to the Hudson, Florida, G.C.O.C./The Bonati Institute grounds, where the participants within each enterprise(s) were housed and worked.

88. Officers, directors and shareholders of each of the corporate participants of the enterprise*(s)*, were aware of all or a portion of the scheme to defraud and to cheat and to obtain money through the rendering of unnecessary and unreasonable medical and surgical and attendant care and services, for which excessive charges were made, including within the concept that any charge whatsoever for unneeded medical or attendant care and services was excessive. In some of the case, the carrier refused to pay excessive charges for care rendered to its insured, **PATRICK O'BRIEN**.

89. Each of the participants within each enterprise, conducted or participated in, directly or indirectly, the conduct of the affairs of that enterprise, through a pattern of unlawful activity. Each of the participants, as co-conspirators on virtually all aspects, expressly agreed with one another, but when they did not, they knew of the general nature and dimension of the conspiracy beyond their personal involvement, and of the scope of the enterprise(s) and its continuing nature.

90. Defendants, and each of them, received income derived, both directly and indirectly, from a pattern of unlawful activities, which activities herein alleged, and invested and used income derived from that pattern of unlawful activities, to acquire an interest in, establish and operate an enterprise(s), such enterprise(s) being **BONATI, P.A., and *THE ASSOCIATION*,** the association-in-fact of **BONATI,** and the other participants and related entities. **BONATI, P.A.** or other participant(s) paid "performance incentives" to employed surgeons and other physicians who were involved in over treating patients such as **PATRICK O'BRIEN**.

91. Plaintiff, **PATRICK O'BRIEN**, has been injured by reason of Defendants' investment and use of income from the enterprise(s), in that such monies were used to create new participants in the enterprise(s), and to fund the enterprise(s) and its participants and employees of the participants. As such, this investment and use of income, as herein alleged, furthered the enterprise(s) and allowed them to grow and flourish and continue to provide unnecessary medical and other health care-related attendance and care. Further, the investment and use of such income, as herein alleged, funded the medical stores, provided equipment used to continue the enterprise(s) within the pattern, all of which, as herein alleged, is continuing to date.

92. Within the enterprise(s), there was a conspiracy, an agreement to commit the predicate acts, culminated by injury-causing overt acts, and Plaintiff, **PATRICK O'BRIEN,** has been injured from such overt acts, done in furtherance of the conspiracy. Such overt acts include, but are not limited to, violation of 18 U.S.C. §1341, the mail fraud statute, performing surgery as a part of the scheme to defraud and cheat that was unnecessary, which, in turn, caused excess and unnecessary and unreasonable billing, facility charges, unnecessary expenditure of Plaintiff's personal funds and insurance monies that are available to provide coverage to Plaintiff for medical care and treatment.

93. The Defendants, and each of them, and the participants hereinabove identified, intended and had the motive to gain financially from the fraudulent and cheating transactions by way of treating targeted patients who would present themselves for care with varying degrees of orthopedic, neurologic or other injury.

94. Defendants established their Hudson, Florida facility and "The System" and have continued it over the years and operated there ***THE ASSOCIATION*** in a geographic area ripe with

older patients who were insured, or who had access to personal funds and property to pay for medical care and treatment, and which facility was also located far enough away from major metropolitan centers, such as Tampa and St. Petersburg, to be of convenient location for those injured and for whom repeat definitive care would be difficult if they had to travel long distances to major metropolitan areas. The "Crystal Palace" and facilities on defendant's campus, accordingly, also provided a clear opportunity, as a licensed surgi-center, to allow such unusual medical and surgical practices as having operation reports pre-prepared on a computer form and filled in as of the date of surgery by essentially identifying only the patient and the area and date of surgery. Such standard form operative reports are not employed reasonably at hospitals for surgery, nor are pre-printed post-operative notes on patients who have had surgery customarily allowed within the general medical community, not only in Florida, but nationwide, as **The Bonati Institute/MDC/G.C.O.C.** employs. Such pre-printed forms were initially designed by **BONATI,** and when sent through the United States Mail to insurance carriers to seek, and for which he and other participants of the G.C.O.C. complex received payment for such surgeries, and when sent to patients who would pay all or a portion of the surgical charges, represented documents which did not "speak the truth", and were rote, canned, and contained misstatements and misrepresentations of what actually occurred at a surgery, such as on the Plaintiff, **PATRICK O'BRIEN**, despite the fact that Defendants, and the participants knew, and each of them knew, that third parties, including the Plaintiff and her insurance carriers and other doctors unrelated, who might provide review or after care, would rely on those documents speaking the truth, as is required by the Florida Administrative Code and Florida Statutes, and by Federal regulations which govern issuance of individualized surgical operative reports concerning the patient,

describing accurately what occurred during the patients' surgery and post-operative visits. Accordingly, the medical charts and records of a patient seen by Defendants and used by **BONATI, P.A./MDC/AMERICAN**, and ***THE ASSOCIATION,*** the association-in-fact enterprise, contained false information, were silent when the patients or others had supplied factual information, and were often inaccurate (yet Bonati, P.A. requires, for example, in its employment contract with Dr. Weksler that he must complete and maintain accurate patient records). These inaccuracies, silences and misstatements and "canned" or pre-prepared operative reports, were all created on a continual basis throughout the years and continuing through to date, as a result of conscious behavior by the **BONATI, BONATI, P.A.**, and by ***THE ASSOCIATION,*** the association-in-fact enterprise. Plaintiff, **PATRICK O'BRIEN**, and other patients, accordingly, lost the benefit of timely and accurate recordation of medical information about themselves, their care and their surgery, which serves as a source of harm to them, and will further account for them having to spend monies for other diagnostic tests and studies and care in the future, which could have been avoided, minimized or negated, had the medical charts and records of ***THE ASSOCIATION*** and Defendants been accurately maintained. Additionally, subsequent treating physicians who are not participants and not within the enterprise(s), unaware of the above, customarily and routinely rely in good faith on such medical charts and records as generated at the Hudson, Florida facility in providing future care and treatment for ex-G.C.O.C. patients, and in prescribing therapy and other related medical care and treatment, which cost patients, such as **PATRICK O'BRIEN**, money which they have to pay, or others have to pay on their behalf.

95. **BONATI, BONATI, P.A.,** and ***THE ASSOCIATION,*** the association-in-fact enterprise, each themselves, from time to time, rely on prior accurate records from other

physicians not based at, nor connected with the G.C.O.C./The Bonati Institute Hudson, Florida facility, such as x-rays or other diagnostic films and studies received from other facilities in cities around the State of Florida or the United States, before initiating care and treatment of patients at the crystal palace, where "the system" is practiced upon Plaintiff and other patients like her.

96. Included within the concept of "The System" is its routine, continual and customary manner of doing business within "The System" including the activities and affairs of **BONATI, P.A.**, and ***THE ASSOCIATION,*** the association-in-fact enterprise, where virtually every patient who is seen at the Hudson, Florida facility and being cared for there by the Defendants, by each of them and by the participants, or any of them, are treated in a customary routine, similar or identical to that by which the Plaintiff was cared for in a serial manner, described herein. This "System", as described by **BONATI,** include a series of acts which are open-ended, with no obvious termination point, with patients being treated for longer or shorter periods of time, many over the course of years with few, if any, less than one year; they are plugged into "The System" for thread of continuity by virtue of the setup which creates long-term care, due to the multiple physician's visits, long time scheduling, repeat visits, follow-up care, all of which continues over the course of months and years. This is the regular way that "The System" and enterprise*(s)* does business.

97. Upon information and belief, the Defendants repeatedly executed or attempted to execute a similar course of fraudulent activity in the course of conducting the affairs of the enterprise(s) described herein in relation to the treatment of other BONATI patients beyond and within a five (5) year period of time and ten (10) year period of time, involving incidents both before and after that of the Plaintiff, **PATRICK O'BRIEN**, which course of conduct similarly

involved use of interstate telephone lines and the also U.S. Mails to promote and further the fraudulent scheme above described, including without limitation the following:

a. In regard to the unnecessary surgery and treatment performed on Cathy Clement f/k/a Cathy Listopad on or about April 24, 1990, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

b. In regard to the unnecessary surgery and treatment performed on Linda Quinn on or about May 14, 1990, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

c. In regard to the unnecessary surgery and treatment performed on Vernon Patchin, involving care prior to 1988, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

d. In regard to the unnecessary surgery and treatment performed on Teala Green, involving care prior to 1987, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

e. In regard to the unnecessary surgery and treatment performed on Dominick Barecchia, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

f. In regard to the unnecessary surgery and treatment performed on Debra Cox, involving care prior to 1991, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

g. In regard to the unnecessary surgery and treatment of Peter Raitt, involving care in 1991 and 1992, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by **BONATI**, all consistent with "the system" and within the above-described network of self-referrals.

h. In regard to the unnecessary surgery and treatment of Richard J. Doyle, involving care in 1991 and 1992, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned

by **BONATI**, all consistent with "the system" and within the above-described network of self-referrals.

i. In regard to the unnecessary surgery and treatment of Danielle K. Clark-Thomas, involving care in 1991, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by **BONATI**, all consistent with "the system" and within the above-described network of self-referrals.

j. Upon information and belief, Plaintiff alleges there are other patients *of Bonati* who unknowingly fell prey to this fraudulent scheme within "the system" as carried out by **BONATI and BONATI, P.A.,** and by each enterprise hereinabove identified, including the association-in-fact enterprise, and who submitted to unnecessary medical care and treatment, resulting in submission to, and payment of bills and claims by their insurance carriers, and out of their own pockets, in effect depleting benefits due to, and property owned by such patients unnecessarily, which might otherwise be available for any reasonably needed necessary future medical and attendant care and treatment (including those identified in k-dd below);

k. William and Gloria Clark;

l. Michael Dragoni;

m. Patricia Shaw-Caillouet;

n. Anthony Van Boxel;

o. Henry Vandenberg;

p. Frederick Roberts;

q. Robert Schenkel;

r. Terrence Sims;

s. Madeline Gladchun;

t. Luleen Fizet;

u. Imogene Hamrick;

v. Leonard Connell, D.C.;

w. Wendy Bianchi;

x. Nancy and Kenneth Sutherland;

y. Bonnie McCue;

z. Robert Lowe;

aa. Elsie Cox;

bb. Gary Deskins;

cc. Velma Hattes;

dd. Those patients both pre-Bankruptcy Petition filing date in 1997 and those patients (i.e. - the "malpractice claimants" in the bankruptcy case identified in plaintiff's 4 and 17 above) who were seen and treated by Bonati and other participants, the association, other related entities including by Dr. Hirschauer post-bankruptcy petition filing date, included in 1 of the 52 claimants in the bankruptcy litigation.

Additional details concerning these known and unknown **BONATI** and defendant(s) patients await discovery and those other cases in pre-suit or in arbitration or litigation.

98. The Plaintiff, **PATRICK O'BRIEN**, was injured in his business or property by reason of the Defendant's violation of 18 U.S.C. §1962(c). Such injuries sustained as a consequence of the aforesaid violations include without limitation:

a. A financial liability for a medically unnecessary course of care and treatment, for which Plaintiff made certain out of pocket payments, not only to **BONATI** and related **BONATI** enterprise(s), but also for various prescription drugs and medical equipment or devices prescribed by **BONATI**;

b. The depletion of available insurance benefits for medical care and treatment under the policies of insurance available to Plaintiff by the amount of charges generated *by **BONATI**,* and other entities within the network of self referrals;

c. Payment of personal funds by **PATRICK O'BRIEN** to effect travel to and from the Hudson, Florida facility (and for housing in Florida) for

unnecessary and unreasonable care prescribed for and rendered to **PATRICK O'BRIEN**, to include costs of transportation, which he paid out of his own pocket, to attend the multiple and excessive office and treatment visits required by "the system" as operated by the enterprise of **BONATI, P.A.**, and the enterprise, "the Association", including the participants hereinabove identified.

d. Plaintiff expended personal funds on long distance telephone charges to confirm and arrange for medical and other care and treatment not needed but scheduled by Defendants, or each of them, or by "the association"; utilizing the "system".

e. Plaintiff paid back his insurance claim money exceeds $50,000.00 for **BONATI** related medical care and treatment.

**COUNT I**
**(18 U.S.C. §1962(c))**

99. Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1 through 98 above inclusive as if fully set forth herein.

100. Plaintiff, **PATRICK O'BRIEN**, as a "person" within the meaning of 18 U.S.C. *§§1961(3), 1964 (c)* alleges a violation of his rights under Public Law 91-452, 18 U.S.C. §1961, *et. seq.* and brings this claim in response to a pattern of fraudulent patient billing for unreasonable and unnecessary medical and health care-related services and insurance schemes designed *by* ***BONATI***, and by **BONATI, P.A.** and **MDC**, to unlawfully generate and obtain substantial monies in furtherance of their own economic interests and the interests of the various corporations and entities within the above described network of self-referrals.

101. At all relevant times, **BONATI, P.A.** was an "enterprise" within the meaning of 18 U.S.C. *§§1961(4), §1962(c),* as was **MDC** which each were engaged in whose activities affected interstate commerce during the relevant times.

102. In the alternative, Defendant, **BONATI**, together with the other providers and corporations and employees thereof in the above described network of self-referrals, at all relevant times constituted an association-in-fact, ***THE ASSOCIATION,*** and was an "enterprise" within the meaning of 18 U.S.C. *§§1961(4), 1962(c),* which was engaged in, or the activities of which affected, interstate commerce during the relevant times. ***THE*** **ASSOCIATION** maintained a continuous economic relationship for a substantial time before and after the subject treatment rendered to Plaintiff, **PATRICK O'BRIEN**, *to wit:* ***BONATI*** referred or caused referral of Plaintiff and other patients of **BONATI** to one or more of the various corporations within the above described network of self-referrals; the providers, in turn, rendered various medical services and procedures to these patients in order to generate profits *for* ***BONATI*** and to promote the common economic interest of each member of ***THE*** **ASSOCIATION.** Each of the above named entities did in fact act in furtherance of and promoted their mutual economic interests at all *relevant* times, and shared the common purpose of maintaining and managing medical facilities and operations directed toward generating income and profits to each in furtherance of their mutually beneficial economic interests.

103. ***BONATI*** and **BONATI, P.A.,** are "persons" within the meaning of 18 U.S.C. §§1961(3), 1962(c) and were employed by or associated with the enterprise(s) described above, including in paragraph 97.

104. Together with others unknown, and with defendant Dr. **Hirschauer**, said Defendants did unlawfully, willingly and knowingly conduct and participate either directly or indirectly in the conduct of the affairs of said enterprise(s) through a pattern of unlawful activity in violation of 18 U.S.C. §1962(c). An ongoing, systematic, fraudulent scheme was designed and

conducted *by **BONATI**, and **BONATI, P.A.*** with the objective of defrauding **BONATI'S** patients and their insurers, and of generating income and profits by knowingly engaging in unnecessary surgeries, medical care, treatment and diagnostic testing; by artificially or fraudulently inflating charges for medical services and related items billed to patients; by intentionally mischaracterizing or misdiagnosing the condition of patients under **BONATI'S** care for purposes of fraudulently increasing billings and available insurance benefits to **BONATI** and other entities in the self-referral system; by having patients seen by other physicians such as Weksler, Moffatt and **Hirschauer** who were employed, trained or controlled or influenced by him with the intent of securing a confirmatory opinion on the creation of dates to justify unnecessary surgeries recommended by **BONATI**, without disclosing his relationship to and control and domination all such other physicians to the patients or their insurers, all with the fraudulent intent of duping the patients and their insurers to submit to and pay for all unnecessary surgeries; by otherwise misrepresenting material facts in conjunction with the diagnosis and treatment of **BONATI'S** patients in his attempt to collect payment therefore from patient's insurers, government agencies or other payers. For purpose of executing this fraudulent scheme, Defendants, **BONATI, MDC, BONATI, P.A., AMERICAN**, and **HIRSCHAUER**, did repeatedly cause billings, correspondence and other mailings to be delivered by the United States Postal Service to patients and their insurers in repeated violation of 18 U.S.C. §1341 (mail fraud), or acted with knowledge that use of the U.S. mails would follow in the ordinary course of business in furtherance of acts made pursuant to this scheme, or it was reasonably foreseeable that the U.S. mails would be used to promote the fraudulent scheme.

105. The aforesaid violations by the Defendants of the mail fraud and wire fraud statutes constitutes instances of unlawful activity within the meaning of 18 U.S.C. §1961(1).

106. The multiple acts of unlawful activity by the Defendants as described above were interrelated; were part of a common and continuous pattern of systematic fraudulent schemes; occurred within ten (10) years of one another and were perpetrated for the same or similar purposes, thus constituting a "pattern" of unlawful activity within the meaning of 18 U.S.C. *§§1961(1), 1961(5).*

WHEREFORE, pursuant to 18 U.S.C. *§1964(c)*, Plaintiff, **PATRICK O'BRIEN**, demands judgment for treble damages *against* **BONATI and BONATI, P.A., MDC, HIRSCHAUER and AMERICAN** together with attorneys' fees and costs and further demands trial by jury as to all issues so triable as a matter of right.

**COUNT II**
**(18 U.S.C. §1962(a))**

107. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 108 above inclusive as if fully set forth herein.

108. Plaintiff, **PATRICK O'BRIEN**, is a "person" within the meaning of *18 U.S.C. §§1961(3), 1964(c)).*

109. Each of the Defendants is a "person" within the meaning of *18 U.S.C. §§1961(3), 1962(a).*

110. **BONATI, P.A., MDC, and AMERICAN,** were each individually and collectively an "enterprise" within the meaning of *U.S.C. §§1961(4), 1962(a)*, which was engaged in, or the activities of which affected, interstate commerce during the relevant times.

111. At all relevant times, ***THE ASSOCIATION*** was an "enterprise" within the meaning of *18 U.S.C. §1961(4), §1962(a)*, which was engaged in and the activities of which affected interstate commerce during the relevant times.

112. Each of the Defendants received income, derived directly or indirectly, from the pattern of unlawful activities set forth above, and used or invested that income, directly or indirectly into operation of the enterprise(s).

113. Plaintiff was injured in his business or property, by reason of the Defendants' violation of *18 U.S.C. §1962(a)*, within the meaning of *18 U.S.C. §1964(c))*. In particular, Defendants' investment and continued use Plaintiff's money in the enterprise(s), facilitated its continued existence and furthered acts to defraud and to wrongfully obtain the money and property of the Plaintiff and other patients.

WHEREFORE, pursuant to 18 U.S.C., *§1964(c))*, the Plaintiff, **PATRICK O'BRIEN**, demands judgment for treble damages *against* **BONATI, MDC**, **BONATI, P.A., HIRSCHAUER, and AMERICAN**, together with attorneys' fees and costs and further demands trial by jury as to all issues so triable as a matter of right.

**COUNT III**
**(*18 U.S.C.* §1962(d) Conspiracy to Violate 18 U.S.C. §1962(c))**

114. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 100 through 107 above inclusive as if fully set forth herein.

115. Plaintiff, **PATRICK O'BRIEN**, is a "person" within the meaning of *18 U.S.C., §§1961(3), 1964(c))*.

116. Each of the Defendants is a "person" within the meaning of *18 U.S.C. §§1961(3), 1964(d)*.

117. At all relevant times, **BONATI, P.A., MDC, and AMERICAN,** were each individually and collectively an *"enterprise"* within the meaning of *18 U.S.C. §§1961(4) and 1962(c)).*

118. At all relevant times, ***THE ASSOCIATION*** was an "enterprise" within the meaning of *18 U.S.C. §§1961(4), 1962(c))*, which was engaged in, or the activities of which affected interstate commerce during the relevant times.

119. Each of the Defendants was associated with the enterprise(s), and conspired, within the meaning of *18 U.S.C. §1962(d)* to violate §1962(c)), that is, the Defendants conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise(s) in relationship to the Plaintiff, through a pattern of unlawful activity, within the meaning of *18 U.S.C. §§1961(1), 1961(5), 1962(c)).*

120. Plaintiff was injured in his business or property by reason of the Defendants' violation of *18 U.S.C. §1962(d)*, within the meaning of 18 U.S.C. §1964(c)). In particular, Plaintiff was injured by Defendants' over acts that constituted unlawful activity within the meaning of *18 U.S.C. §1961(1).*

WHEREFORE, pursuant to 18 U.S.C. §1964(c)), Plaintiff, **PATRICK O'BRIEN,** demands judgment for treble damages *against* **BONATI, P.A. and AMERICAN,** together with attorneys' fees and costs and further demands trial by jury as to all issues so trial as a matter of right.

**COUNT IV**
**(*18 U.S.C. §1962(d)* by Conspiracy to Violate**
**18 U.S.C. §1962(a)**

121. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 108 through 114 above inclusive as if fully set forth herein.

122. Plaintiff, **PATRICK O'BRIEN**, is a "person" within the meaning of *18 U.S.C. §§1961(3), 1964(c))*.

123. Each of the Defendants is a "person" within the meaning of 18 U.S.C. *§§1961(3), 1964(d)*.

124. At all relevant times, **BONATI, P.A., AMERICAN,** and **MDC**, individually and collectively were an "enterprise" within the meaning of *18 U.S.C. §§1961(4), 1961(a)*.

125. At all relevant times, ***THE ASSOCIATION*** was an "enterprise" within the meaning of *18 U.S.C. §§1961(4), 1962(a),* which was engaged in or the activities of which affected interstate commerce during the relevant times.

126. Each of the Defendants conspired within the meaning of 18 U.S.C. §1962(d), to violate *18 U.S.C. §§1962(a),* that is, the Defendants conspired to receive income derived directly or indirectly from a pattern of unlawful activity, within the meaning of *18 U.S.C. §§1961(1), 1961(5), 1962(a),* and to use or invest, directly or indirectly, such income in the acquisition or operation of an enterprise(s).

127. Plaintiff was injured in his business or property by reason of the Defendant's violation of *18 U.S.C. §1962(d),* within the meaning of *18 U.S.C. §1964(c))*. In particular, Plaintiff was injured by Defendant's overt acts that constituted unlawful activity within the meaning of *18 U.S.C. §1961(1)*.

WHEREFORE, Plaintiff, **PATRICK O'BRIEN,** demand judgment for treble damages against **BONATI, MDC, BONATI, P.A., HIRSCHAUER and AMERICAN** together with

attorneys' fees and costs and further demands trial by jury as to all issues so triable as a matter of right.

**COUNT V**
**(SEC. 772.103(3), FLA. REV. STAT.)**

128. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 127 above inclusive as if fully set forth herein.

129. Plaintiff, **PATRICK O'BRIEN**, alleges a violation of his rights under *The* Civil Remedies for Criminal Practices Act, Sec. 772. 101, *et. seq.* ("*Section*"), and brings this claim in response to a pattern of fraudulent patient billing for unreasonable and unnecessary medical and health care-related services and insurance schemes designed by Defendants **BONATI, MDC** and **BONATI, P.A.** to unlawfully generate and obtain substantial monies in furtherance of his own economic interests and the interests of the various corporations and entities within the above described network of self-referrals.

130. At all relevant times, **BONATI, P.A., AMERICAN** and **MDC** were each an "enterprise" within the meaning of *Sections 772.102(3), 772.103(3)*.

131. In the *alternative*, **BONATI and HIRSCHAUER,** together with the other providers and corporations and employees thereof in the above described network of self-referrals, at all relevant times constituted ***THE ASSOCIATION,*** an association-in-fact, and was an "enterprise" within the meaning of *Sections 772.102(3), 772.103(3)*. ***THE ASSOCIATION*** maintained a continuous economic relationship for a substantial time before and after the subject treatment rendered to Plaintiff, *to wit:* ***BONATI*** referred or caused referral of Plaintiff and other patients of **BONATI** to one or more of the various corporations within the above described network of self-referrals; the providers, in turn, rendered various medical services and procedures

to these patients in order to generate profits *for* ***BONATI*** and to promote the common economic interest of each member of ***THE*** **ASSOCIATION.** Each of the above named entities did in fact act in furtherance of and promoted their mutual economic interests at all material times, and shared the common purpose of maintaining and managing medical facilities and operations directed toward generating income and profits to each in furtherance of their mutually beneficial economic interests.

132. ***BONATI,*** **HIRSCHAUER ,MDC, AMERICAN** and **BONATI, P.A.**, are "persons" within the meaning of *Section 772.103(3),* and were employed by or associated with the enterprise(s) described in paragraph 97 or alternatively in paragraph 98.

133. Together with *others* unknown, said Defendants did unlawfully, willingly and knowingly conduct and participate either directly or indirectly in the conduct of the affairs of said enterprise(s) through a pattern of unlawful activity in violation of *Section 772.103(3).* An ongoing, systematic, fraudulent scheme was designed and conducted *by* ***BONATI, MDC*** *and* ***BONATI, P.A.*** with the assistance of **HIRSCHAUER and AMERICAN** and with the objective of defrauding **BONATI, MDC, AMERICAN and BONATI, P.A.'s** patients and their insurers, and of generating income and profits by knowingly engaging in unnecessary surgeries, medical care, treatment and diagnostic testing; by artificially or fraudulently inflating charges for medical services and related items billed to patients; by intentionally mischaracterizing or misdiagnosing the condition of patients under **Defendants'** care for purposes of fraudulently increasing billings and available insurance benefits to BONATI and the other defendants and other entities in the self-referral system; by referring each patient to physicians employed, trained or controlled and influenced by him with the intent of securing a confirmatory opinion on unnecessary surgeries or

procedures recommended by him and by other defendants, without disclosing his relationship to such other physicians to the patients or their insurers, all with the fraudulent intent of duping the patients and their insurers to submit to and pay for the unnecessary surgery; by otherwise misrepresenting material facts in conjunction with the diagnosis and treatment of **BONATI'S** and the Defendant's patients in an attempt to collect payment therefore from patient's insurers, government agencies or other payers such as Messa. For purpose of executing this fraudulent scheme, Defendants, **BONATI, BONATI, P.A., MDC, HIRSCHAUER and AMERICAN,** did repeatedly cause billings, correspondence and other mailings to be delivered by the United States Postal Service to patients and their insurers in repeated violation of 18 U.S.C. §1341 (mail fraud), under *Section 772.102(1)(b),* or acted with knowledge that use of the U.S. mails would follow in the ordinary course of business in furtherance of acts made pursuant to this scheme, or it was reasonably foreseeable that the U.S. mails would be used to promote the fraudulent scheme.

134. The aforesaid violations by the Defendants of the mail fraud statute constitutes instances of unlawful activity within the meaning of *Section 772.012(1)(b).*

135. Upon information and belief, the Defendants repeatedly executed or attempted to execute a similar course of fraudulent activity in the course of conducting the affairs of the enterprise(s) in relation to the treatment of other BONATI, MDC and BONATI, P.A. patients within and beyond a five (5) year period of time, involving incidents both before and after that of the Plaintiff, **PATRICK O'BRIEN**, which course of conduct similarly involved use of the U.S. Mails to promote and further the fraudulent scheme above described in violation of 18 U.S.C. §1341 under *Section 772.102(1)(b),* including without limitation the following:

a. In regard to the unnecessary surgery and treatment performed on Cathy Clement f/k/a Cathy Listopad on or about April 24, 1990, which course of

care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

b. In regard to the unnecessary surgery and treatment performed on Linda Quinn on or about May 14, 1990, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

c. In regard to the unnecessary surgery and treatment performed on Vernon Patchin, involving care prior to 1988, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

d. In regard to the unnecessary surgery and treatment performed on Teala Green, involving care prior to 1987, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

e. In regard to the unnecessary surgery and treatment performed on Dominick Barecchia, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

f. In regard to the unnecessary surgery and treatment performed on Debra Cox, involving care prior to 1991, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by BONATI within the above described network of self-referrals;

g. In regard to the unnecessary surgery and treatment of Peter Raitt, involving care in 1991 and 1993, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by **BONATI**, all consistent with "the system" and within the above-described network of self-referrals, otherwise identified as ***THE ASSOCIATION.***

h. In regard to the unnecessary surgery and treatment of Richard J. Doyle, involving care in 1991 and 1992, which course of care similarly involved multiple referrals of the patient to other providers and corporations owned by **BONATI**, all consistent with "the system" and within the above-described network of self-referrals, otherwise identified as ***THE ASSOCIATION.***

I. In regard to the unnecessary surgery and treatment of Danielle K. Clark-Thomas, involving care in 1991, which course of care similarly

involved multiple referrals of the patient to other providers and corporations owned by **BONATI**, all consistent with "the system" and within the above-described network of self-referrals, otherwise identified as ***THE ASSOCIATION.***

j. Upon information and belief, Plaintiff alleges there are other patients *of Bonati, Bonati, P.A., MDC, Weksler, Hirschauer* who unknowingly fell prey to this fraudulent scheme within "the system" as carried out by **BONATI and BONATI, P.A.,** and by each enterprise hereinabove identified, including ***THE ASSOCIATION,*** the association-in-fact enterprise, and who submitted to unnecessary medical care and treatment, resulting in submission to, and payment of bills and claims by their insurance carriers, and out of their own pockets, in effect depleting benefits due to, and property owned by such patients unnecessarily, which might otherwise be available for any reasonably needed necessary future medical and attendant care and treatment. These include patients identified and operated on at the Hudson, Florida facility over the past five (5) years (as well as those identified below in k-dd below).

k. William and Gloria Clark;

l. Michael Dragoni;

m. Patricia Shaw-Caillouet;

n. Anthony Van Boxel;

o. Henry Vandenberg;

p. Frederick Roberts;

q. Robert Schenkel;

r. Terrence Sims;

s. Madeline Gladchun;

t. Luleen Fizet;

u. Imogene Hamrick;

v. Leonard Connell, D.C.;

w. Wendy Bianchi;

x. Nancy and Kenneth Sutherland;

y. Bonnie McCue;

z. Robert Lowe;

aa. Elsie Cox;

bb. Gary Deskins;

cc. Velma Hattes;

dd. Those patients both pre-Bankruptcy Petition filing date in 1997 and those patients (i.e. - the "malpractice claimants" in the bankruptcy case identified in plaintiff's 4 and 17 above) who were seen and treated by Bonati and other participants, the association, other related entities including by Dr. Hirschauer post-bankruptcy petition filing date, included in 1 of the 52 claimants in the bankruptcy litigation.

Additional details concerning these known and unknown **BONATI** and defendant patients awaits discovery including those in pre-suit and arbitration or litigation.

136. The multiple incidents of unlawful activity by the Defendants as described above were interrelated; were part of a common and continuous pattern of systematic fraudulent schemes; occurred within five (5) years of one another and were perpetrated for the same or similar results, accomplices or methods of commission and are not isolated incidents, thus constituting a "pattern" of unlawful activity within the meaning of *Sections 772.102(1)(b), 772.102(4).*

137. The Plaintiff, **PATRICK O'BRIEN**, was injured in his business or property by reason of the Defendant's violation of *Section 772.103(3).* Such injuries sustained as a consequence of the aforesaid violation include without limitation:

a. A financial liability for a medically unnecessary course of care and treatment, for which Plaintiff made certain out of pocket payments, not only to **BONATI, MDC, BONATI, P.A., HIRSCHAUER and** Weksler and related **BONATI** enterprises, but also for various prescription drugs and

medical equipment or devices prescribed by **BONATI** or other defendants which costs were not otherwise covered by available insurance;

b. The depletion of available insurance benefits for medical care and treatment under the policies of insurance available to Plaintiff by the amount of charges generated by Defendants and other entities within the network of self referrals;

c. Payment of personal funds by **PATRICK O'BRIEN** to effect travel to and from the Hudson, Florida facility and in his Michigan home for unnecessary and unreasonable care prescribed for and rendered to **PATRICK O'BRIEN**, to include costs of transportation, which he paid out of his own pocket, to attend the multiple and excessive office and treatment visits required by "the system" as operated by the enterprise of **BONATI, P.A.**, and the enterprise, ***THE ASSOCIATION,*** including the participants hereinabove identified.

WHEREFORE, pursuant to *Section 772.104,* Plaintiff, **PATRICK O'BRIEN**, demands judgment for treble damages *against* ***BONATI***, **MDC, HIRSCHAUER, AMERICAN** and **BONATI, P.A.**, together with attorneys' fees and costs and further demands trial by jury as to all issues so triable as a matter of right.

**COUNT VI**
**(SECTION 772.103(1), FLA. REV. STAT.)**

138. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 138 above inclusive as if fully set forth herein.

139. Plaintiff, **PATRICK O'BRIEN**, is a "person" within the meaning of *Section 772.104.*

140. Each of the Defendants is a "person" within the meaning of *Section 772.103(1).*

141. **BONATI, P.A., AMERICAN and MDC** and each of them collectively at all relevant times was an "enterprise" within the meaning of *Sections 772.102(3),* 772.103(1).

142. At all relevant times, ***THE ASSOCIATION*** was an "enterprise" within the meaning of *Sections 772.102(3), 772.103(1).*

143. Each of the Defendants received income, derived directly or indirectly, from the pattern of unlawful activities set forth above, and used or invested that income, directly or indirectly into operation of the enterprise(s).

144. Plaintiff was injured in his business and property by reason of the Defendants violation of *Section 772.103(1),* within the meaning of *Section 772.104.* In particular, Defendants' investment and continued use of Plaintiff's money in the enterprise(s) facilitating their continued existence and furthered acts to defraud and to wrongfully obtain the money and property of the Plaintiff and other patients.

WHEREFORE, pursuant to *Section 772.104,* Plaintiff, **PATRICK O'BRIEN**, demands judgment for treble damages *against* **BONATI, BONATI, P.A., MDC, AMERICAN, and HIRSCHAUER**, together with attorneys' fees and costs and further demands trial by jury as to all issues so triable as a matter of right.

**COUNT VII**
**(SECTION 772.103(4) CONSPIRACY TO VIOLATE 772.103(3), FLA. REV. *STAT.)***

145. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 129 through 138 above inclusive as if fully set forth herein.

146. Plaintiff, **PATRICK O'BRIEN**, is a "person" within the meaning of *Section 772.104.*

147. Each of the Defendants is a "person" within the meaning of Section 772.103(4).

148. At all relevant times, **BONATI, P.A., AMERICAN** and **MDC** was an "enterprise" within the meaning of Sections 772.102(3), 772.103(3).

149. At all relevant times, ***THE ASSOCIATION*** was an "enterprise" within the meaning of Sections 772.102(3), 772.103(3).

150. Each of the Defendants was associated with the enterprise(s) and conspired, within the meaning of Section 772.103(4), to violate Section 772.103(3), that is, the Defendants conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise(s) in relationship to the Plaintiff, through a pattern of unlawful activity, within the meaning of Sections 772.102(1)(b), 772.102(4), 772.103(3).

151. Plaintiff was injured in his business or property by reason of the Defendants violation within the meaning of Section 772.103(4), within the meaning of Section 772.104. In particular, Plaintiff was injured by Defendants overt acts that constituted unlawful activity within the meaning of Section 772.102(1)(b).

WHEREFORE, pursuant to Section 772.104, Plaintiff, **PATRICK O'BRIEN**, demands judgment for treble damages *against* ***BONATI*** and **BONATI, P.A., AMERICAN and MDC**, together with attorneys' fees and costs and further demands trial by jury as to all issues so triable as a matter of right.

## COUNT VIII
## *(SECTION 772.103(4)* CONSPIRACY TO VIOLATE SECTION 772.103(1))

152. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 139 through 145 above inclusive as if fully set forth herein.

153. Plaintiff, **PATRICK O'BRIEN**, is a "person" within the meaning of Section 772.104.

154. Each of the Defendants is a "person" within the meaning of Section 772.103(4).

155. At all relevant times, **BONATI, P.A., AMERICAN** and **MDC** each and collectively was an "enterprise" within the meaning of Sections 772.102(3), 772.103(1).

156. At all relevant times, ***THE ASSOCIATION*** was an "enterprise" within the meaning of Sections 772.102(3), 772.103(1).

157. Each of the Defendants conspired, within the meaning of Section 772.103(4) to violate Section 772.103(1), that is, the Defendants conspired to receive income derived directly or indirectly from a pattern of unlawful activity within the meaning of *Sections* 772.102(1)(b), 772.102(4), 772.103(1), and to use or invest, directly or indirectly, such income in the acquisition or operation of an enterprise(s).

158. Plaintiff was injured in his business or property by reason of the Defendants violation of Section 772.103(4) within the meaning of Section 772.104. In particular, Plaintiff was injured by Defendants overt acts that constituted unlawful activity, within the meaning of Section 772.102(1)(b).

WHEREFORE, pursuant to Section 772.104, Plaintiff, **PATRICK O'BRIEN**, demands judgment for treble damages against **BONATI, MDC, BONATI, P.A., HIRSCHAUER and AMERICAN**, together with attorneys' fees and costs and further demands trial by jury as to all issues so triable as a matter of right.

**<u>COUNT IX - MEDICAL MALPRACTICE (BONATI, MD)</u>**

159. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1-44, 50, 53-59, 61-63, and 66-70 above as if fully set forth herein.

160. This is an action for damages in excess of $25,000.00, exclusive of interest, costs and attorneys' fees; that this matter was submitted to pre-suit screening under Chapter 766, Florida Statutes (notice of intent with expert affidavits supporting the validity of plaintiff's claims against the defendants and each of them), and, after extensions of time within pre-suit screening, this claim was not resolved necessitating the filing of this lawsuit. Defendants **BONATI, BONATI, P.A., MDC, AMERICAN** and **HIRSCHAUER** did not make discoverable information available during pre-suit screening and did not complete and participate in pre-suit screening in good faith and as such their answers and defenses to his complaint should be struck pursuant to Florida Statutes 766. 203, 766.206 and 766.206(1), 766.205, and 766.106.

161. At all material times, in the part during treatment by Defendants, **PATRICK O'BRIEN and MARLENE O'BRIEN**, are husband and wife residing in the State of Michigan, currently in Pennsylvania.

162. At all material times, Defendants, **BONATI, HIRSCHAUER,** Moffatt and Weksler were employees of **BONATI, P.A.** acting in the course and scope of their employment as physicians and surgeons for which **BONATI, P.A.** was responsible under the doctrine of respondeat superior for their actions, inactions and negligence.

163. At all material times, Defendant **BONATI**, owed a duty of reasonable care to the plaintiff, **PATRICK O'BRIEN**, to provide that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably careful physicians and healthcare providers.

164. At all material times, while acting in the scope of his employment, Defendant **ALFRED O. BONATI, M.D.** breached the duty of care owed to plaintiff, **PATRICK O'BRIEN**,

in one or more of the following ways, any one of which a departure from the acceptable standard of care:

a. By operating on him whether as a surgeon or a co-surgeon or causing others to operate on him or for other procedures to be performed (including pain management), such were unnecessary and dangerous to the patient;

b. In negligently aggravating any pre-existing conditions;

c. By negligently failing to properly examine or to accurately diagnose the plaintiff before performing surgery or procedures (utilizing standard diagnostic techniques);

d. By negligently failing to take reasonable steps to establish a diagnosis;

e. By negligently or intentionally performing unnecessary surgery;

f. By negligently performing unconventional surgical procedure(s) upon plaintiff which exposed or set the patient up for future collapse or damage to the vertebral column and related structures of the body;

g. By intentionally performing unconventional surgical procedure upon plaintiff which exposed or set the patient up for future collapse or damage to the vertebral column and related structures of the body;

h. By negligently or intentionally performing experimental surgery, or surgery on the plaintiff which had been repeatedly criticized over the years by specialists in the field of orthopedic surgery as to its efficacy and patient benefit and medical technique in spinal surgery, and criticized as being more directed to generate money for the surgeon and the defendant facilities than to benefit the patient.

i. By negligently conducting or causing to be conducted a course of unnecessary diagnostic tests and other medical procedures and care upon the Plaintiff. ;

j. By negligently and intentionally putting his own financial interest above the physical well-being of the Plaintiff and undertaking a course of care and treatment which was hazardous and not beneficial to the Plaintiff;

k. By engaging in the pattern of self referrals of this and other unwitting patients to other physicians and entities within the Hudson, Florida complex at The Bonati Institute/Gulf Coast Orthopedic Center for the purpose of

generating income and profit from the rendition of unnecessary and surgical and pain management care billed at excessive charges and rates;

l. By negligently or intentionally misinterpreting diagnostic tests and studies and radiographic films;

m. By negligently failing to order the appropriate preoperative care and diagnostic work-up;

n. By negligently performing or failing to perform the appropriate diagnostic testing upon the Plaintiff;

o. By negligently failing to accurately and adequately record and document clinical findings and observations pertinent to the care and treatment of the Plaintiff in the Plaintiff's medical chart as required by law;

p. By performing and engaging in unnecessary diagnostic testing all in violation of *F.S. Section 766.111.*

q. By otherwise committing negligent acts or omissions in connection with the recommendations, diagnosis, treatment, multiple surgeries, pain management and extended care of the Plaintiff;

r. By misrepresenting statements of material fact to the Plaintiff, both negligently and intentionally, upon which Plaintiff relied in good faith in submitting to care and surgery to his prejudice with the result being harm caused to the Plaintiff.

s. By negligently or intentionally causing to create or creating medical charts and records concerning this plaintiff patient, which did not, in accordance with Florida Statutes or Florida Administrative Code, accurately reflect his medical care, treatment and condition(s), through the use (by this physician and his employer and corporations of The Bonati Institute) of a series of "pre-dictated" medical charts, records and forms including for example, operative reports, form chart notes, recovery room records and the like.

t. By negligently referring the patient to surgery that he did not need initially and on repeat occasions.

u. By performing unnecessary surgeries that were unnecessary in a serial pattern without letting natural healing over time take place.

v. In conspiring with others at The Bonati Institute or on its campus to exploit this patient for financial gain.

165. As a direct and proximate result of the foregoing actions, inactions and negligence of this Defendant, **BONATI**, as described above, Plaintiff, **PATRICK O'BRIEN**, suffered bodily injury, resulting pain and suffering, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, disability or physical impairment, disfigurement, mental anguish, loss of capacity for the enjoyment of life, permanent injury and aggravation of any pre-existing conditions. These losses, impairments and damages are permanent or continuing in nature and Plaintiff will suffered these losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment for damages, both compensatory and punitive, against the Defendant, **ALFRED O. BONATI, M.D.** and his employer, **GULF COAST ORTHOPEDIC CENTER - ALFRED O. BONATI, P.A. (BONATI, P.A.)** and **MEDICAL DEVELOPMENT CORPORATION OF PASCO COUNTY, INC. (MDC)**, jointly and severally, together with costs, attorneys' fees pursuant to Florida Statutes 766.111, and interest on liquidated sums, and further demands trial by jury as to all issues so triable of right by a jury.

## COUNT X - MEDICAL MALPRACTICE (HIRSCHAUER, DO)

166. Plaintiff realleges and incorporates by reference all allegations set forth in paragraph 160 above as if fully set forth herein.

167. This is an action for damages in excess of twenty-five thousand ($25,000.00) dollars exclusive of interest, costs and attorneys' fees; that this matter was submitted to pre-suit screening under Chapter 766, Florida Statutes (notice of intent with expert affidavits supporting the validity of plaintiff's claims against the defendants and each of them), and, after extensions of time within pre-suit screening, this claim was not resolved necessitating the filing of this lawsuit.

Defendants **BONATI, BONATI, P.A., MDC, AMERICAN** and **HIRSCHAUER** did not make discoverable information available during pre-suit screening and did not complete and participate in pre-suit screening in good faith and as such their answers and defenses should be struck pursuant to Florida Statutes 766. 203, 766.206 and 766.206(1), 766.205, and 766.106.

168. At all material times, **PATRICK O'BRIEN and MARLENE O'BRIEN**, were husband and wife residing in the State of Michigan during treatment, currently in Pennsylvania.

169. At all material times, Defendant **HIRSCHAUER**, owed a duty of reasonable care to the plaintiff, **PATRICK O'BRIEN**, to provide that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably careful physicians and healthcare providers.

170. At all material times, while acting in the scope of his employment, Defendant **HIRSCHAUER** breached the duty of care owed to plaintiff, **PATRICK O'BRIEN**, in one or more of the following ways, any one of which a departure from the acceptable standard of care:

a. By negligently operating on him or causing others to operate on him or for other procedures to be performed, all of which were unnecessary and dangerous to the patient;

b. In negligently aggravating any pre-existing conditions;

c. By negligently failing to properly exam or accurately diagnose the plaintiff before performing surgery or procedure;

d. By negligently to take reasonable steps to establish a diagnosis;

e. By negligently or intentionally performing unnecessary pain management injections and care;

f. By negligently performing unnecessary pain management procedures upon plaintiff which is exposed the patient to future damage to his vertebral column and related structures of the body;

g. By intentionally performing unnecessary pain management procedures upon plaintiff which is exposed the patient to future damage to his vertebral column and related structures of the body;

h. By negligently conducting or causing to be conducted a course of unnecessary diagnostic tests and other medical procedures and care upon the Plaintiff. ;

I. By negligently and intentionally putting his own financial interest above the physical well-being of the Plaintiff and undertaking a course of care and treatment which was hazardous and not beneficial to the Plaintiff;

j. By engaging in the pattern of self referrals of this and other unwitting patients to other physicians and entities within the Hudson, Florida complex at The Bonati Institute/Gulf Coast Orthopedic Center for the purpose of generating income and profit from the rendition of unnecessary care billed at excessive charges and rates;

k. By negligently or intentionally misinterpreting diagnostic tests and studies and radiographic films;

l. By negligently failing to order the appropriate preoperative care and diagnostic work-up;

m. By negligently performing or failing to perform the appropriate diagnostic testing upon the Plaintiff;

n. By negligently failing to accurately and adequately record and document clinical findings and observations pertinent to the care and treatment of the Plaintiff in the Plaintiff's medical chart as required by law;

o. By performing and engaging in unnecessary diagnostic testing and procedures all in violation of *F.S. Section 766.111*.

p. By otherwise committing negligent acts or omissions in connection with the diagnosis, treatment, multiple surgeries and extended care of the Plaintiff;

q. By misrepresenting statements of material fact to the Plaintiff, both negligently and intentionally, upon which Plaintiff relied in good faith in submitting to care and surgery and the result being harmed caused to the Plaintiff.

r. By negligently or intentionally causing to create or creating medical charts and records concerning this plaintiff patient, which did not, in accordance

with Florida Statutes or Florida Administrative Code, accurately reflect his medical care, treatment and condition(s), through the use of a series of "pre-dictated" form including operative reports, forms chart notes, recovery room records and the like.

s. By negligently referring or conferring the need to operate again to the patient for surgery that he did not need.

t. By performing unnecessary procedures that were unnecessary in a serial pattern without letting natural healing over time take place.

u. In conspiring with others at The Bonati Institute to exploit this patient for financial gain.

171. As a direct and proximate result of the foregoing actions, inactions and negligence of the Defendant, **HIRSCHAUER**, as described above, Plaintiff, **PATRICK O'BRIEN**, suffered bodily injury, resulting pain and suffering, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, disability or physical impairment, disfigurement, mental anguish, loss of capacity for enjoyment of life, permanent injury and aggravation of any pre-existing condition. These losses, impairments and damages are permanent or continuing in nature and Plaintiff will suffered these losses, impairments and damages in the future.

WHEREFORE, Plaintiff demands judgment for damages, both compensatory and punitive, against the Defendant **HIRSCHAUER**, **AMERICAN**, **GULF COAST ORTHOPEDIC CENTER - ALFRED O. BONATI, P.A. (BONATI, P.A.)** and **MEDICAL DEVELOPMENT CORPORATION OF PASCO COUNTY, INC. (MDC)**, jointly and severally, together with costs, attorneys' fees pursuant to Florida Statutes 766.111, and interest on liquidated sums, and further demands trial by jury as to all issues so triable of right by a jury.

## COUNT XI - MEDICAL MALPRACTICE (AMERICAN)

172. Plaintiff realleges and incorporates by reference all allegations set forth in paragraph 160 above as if fully set forth herein.

173. This is an action for damages in excess of twenty-five thousand ($25,000.00) dollars exclusive of interest, costs and attorneys' fees; that this matter was submitted to pre-suit screening under Chapter 766, Florida Statutes (notice of intent with two expert affidavits supporting the validity of plaintiff's claims against the defendants and each of them), and, after extensions of time within pre-suit screening, this claim was not resolved necessitating the filing of this lawsuit. Defendants **BONATI, BONATI, P.A., MDC,** and **HIRSCHAUER** did not make discoverable information available during pre-suit screening and did not complete and participate in pre-suit screening in good faith and as such their answers and defenses should be struck pursuant to Florida Statutes 766. 203, 766.206 and 766.206(1), 766.205, and 766.106.

174. At all material times, **PATRICK O'BRIEN and MARLENE O'BRIEN**, were husband and wife residing in the State of Michigan at time of treatment, currently in Pennsylvania.

175. At all material times, Defendant **AMERICAN**, owed a duty of reasonable care to the plaintiff, **PATRICK O'BRIEN**, and provided that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by some unreasonably careful physicians and healthcare providers.

176. At all material times, while acting in the scope of employment, Defendant **AMERICAN** through Dr. **HIRSCHAUER** breached the duty of care owed to plaintiff, **PATRICK O'BRIEN**, in one or more of the following ways, any one of which a departure from the acceptable standard of care:

a. By operating on him whether as a surgeon or a co-surgeon or causing others to operate on him or for other procedures to be performed (including pain management), such were unnecessary and dangerous to the patient;

b. In negligently aggravating any pre-existing conditions;

c. By negligently failing to properly examine or to accurately diagnose the plaintiff before performing surgery or procedure;

d. By negligently failing to take reasonable steps to establish a diagnosis;

e. By negligently or intentionally performing unnecessary surgery;

f. By negligently performing unconventional surgical procedure(s) upon plaintiff which exposed or set the patient up for future collapse or damage to the vertebral column and related structures of the body;

g. By intentionally performing unconventional surgical procedure upon plaintiff which exposed or set the patient up for future collapse or damage to the vertebral column and related structures of the body;

h. By negligently or intentionally performing experimental surgery;

i. By negligently conducting or causing to be conducted a course of unnecessary diagnostic tests and other medical procedures and care upon the Plaintiff;

j. By negligently and intentionally putting his own financial interest above the physical well-being of the Plaintiff and undertaking a course of care and treatment which was hazardous and not beneficial to the Plaintiff;

k. By engaging in the pattern of self referrals of this and other unwitting patients to other physicians and entities within the Hudson, Florida complex at The Bonati Institute/Gulf Coast Orthopedic Center for the purpose of generating income and profit from the rendition of unnecessary and surgical and pain management care billed at excessive charges and rates;

l. By negligently or intentionally misinterpreting diagnostic tests and studies and radiographic films;

m. By negligently failing to order the appropriate preoperative care and diagnostic work-up;

n. By negligently performing or failing to perform the appropriate diagnostic testing upon the Plaintiff;

o. By negligently failing to accurately and adequately record and document clinical findings and observations pertinent to the care and treatment of the Plaintiff in the Plaintiff's medical chart as required by law;

p. By performing and engaging in unnecessary diagnostic testing all in violation of *F.S. Section 766.111.*

q. By otherwise committing negligent acts or omissions in connection with the recommendations, diagnosis, treatment, multiple surgeries, pain management and extended care of the Plaintiff;

r. By misrepresenting statements of material fact to the Plaintiff, both negligently and intentionally, upon which Plaintiff relied in good faith in submitting to care and surgery to his prejudice with the result being harm caused to the Plaintiff.

s. By negligently or intentionally causing to create or creating medical charts and records concerning this plaintiff patient, which did not, in accordance with Florida Statutes or Florida Administrative Code, accurately reflect his medical care, treatment and condition(s), through the use (by this physician and his employer and corporations of The Bonati Institute) of a series of "pre-dictated" medical charts, records and forms including for example, operative reports, form chart notes, recovery room records and the like.

t. By negligently referring the patient to surgery that he did not need initially and on repeat occasions.

u. By performing unnecessary surgeries that were unnecessary in a serial pattern without letting natural healing over time take place.

v. In conspiring with others at The Bonati Institute to exploit this patient for financial gain.

177. As a direct and proximate result of the foregoing actions, inactions and negligence of this Defendant, **AMERICAN**, as described above, Plaintiff, **PATRICK O'BRIEN**, suffered bodily injury, resulting pain and suffering, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, disability or physical impairment,

disfigurement, mental anguish, loss of capacity for enjoyment of life, permanent injury and aggravation of any pre-existing condition. These losses, impairments and damages are permanent or continuing in nature and Plaintiff will suffered these losses in the future.

WHEREFORE, Plaintiff demands judgment for damages, both compensatory and punitive, against the Defendant, **AMERICAN**, together with costs, attorneys' fees pursuant to Florida Statutes 766.111, and interest on liquidated sums, and further demands trial by jury as to all issues so triable of right by a jury.

## COUNT XII - Fraud and Deceit

178. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1-177 above as if fully set forth herein.

179. That the defendants, **BONATI, MDC, AMERICAN** and **HIRSCHAUER** and through their website and advertising, **BONATI, P.A./GCOC** made false statements of material fact to induce patient **O'BRIEN** to submit to one (1) or more surgeries and a series of injections at The Bonati Institute/Gulf Coast Orthopedic Centers campus in Hudson, Florida in an **MDC** operating procedure room at The Bonati Institute.

180. That the patient **O'BRIEN** justifiably relied on what he read on the internet site for The Bonati Institute and on the representations of staff over the telephone, and on their correspondence, and on the false statements of material fact made to him by Defendants, by Defendant's agents and by Dr. **BONATI** that he was a candidate for multiple surgery, and by Dr. **HIRSCHAUER** that the pain management procedures utilized by Dr. **HIRSCHAUER** were indicated and properly administered. Additionally, each of these defendant physicians, **BONATI** and **HIRSCHAUER**, represented to the plaintiff orally that these procedures were indicated,

necessary and reasonable medical procedures that they had performed with great frequency in the past successfully. Collectively, these physicians, along with their World Wide Website for The Bonati Institute, boasted a virtual "no complication" rate and an highly overrated and medically un-obtainable success rate for their surgeries and procedures, knowing that **O'BRIEN** was uneducated in such matters of medicine and science and surgery and would rely on these false and misleading statements, which he did, to his detriment and prejudice.

181. That as a direct and proximate result of the false statements and misrepresentation of fact made by The Bonati Institute on its website, by the correspondence and statements of its employees and agents, and by the false misrepresentation of material fact by defendants and their employees, agents and by **HIRSCHAUER** and **BONATI**, Plaintiff, **PATRICK O'BRIEN**, was harmed and damaged.

182. Plaintiff, **PATRICK O'BRIEN**, realleges the allegations of paragraphs 166, 172 and 177 setting forth the damages that he suffered as a direct and proximate result of the actions, inactions and negligence and of the false statements of material fact which defendants knew he would rely on, and he did to his detriment.

183. At all material times hereto, Defendant **BONATI** was operating in the course and scope of his employment with The Bonati Institute as a physician and owner, and Defendant **HIRSCHAUER** was acting within the course and scope of his employment with American Medical Care, Inc. **(AMERICAN)** as a staff anesthesiologist and as an agent, servant or employee also of **Bonati, P.A./GCOC.**

WHEREFORE, Plaintiff **PATRICK O'BRIEN** demands judgment for damages against the Defendants, jointly and severally, together with costs and interest on liquidated sums, and further demands punitive damages and trial by jury as to all issues so triable of right by a jury.

**COUNT XIII - Consortium**

184. Plaintiff **MARLENE O'BRIEN** realleges the allegations of Counts I though XII above as if fully set forth herein.

185. That as a direct and proximate of the foregoing actions and inactions and negligence and false statements of material fact, inactions by the defendants and each of them, and by violation of the state and federal RICO laws by defendants as alleged hereinabove, **MARLENE O'BRIEN** lost by reason of her husband's injury, his services, comfort, society and attention in the past and in the future.

186. Furthermore, **MARLENE O'BRIEN** lost, by virtue of her husband's injuries or incurred reasonable value of hospitalization and medical and nursing care and treatment necessarily or reasonably obtained by her for her husband or to be obtained in the future.

WHEREFORE, Plaintiff **MARLENE O'BRIEN** demands judgment for damages against the Defendants, jointly and severally, together with costs and interest on liquidated sums and attorneys' fees as allowed by Florida and Federal RICO and by F.S. 766.111, and further demands punitive damages and trial by jury as to all issues so triable of right by a jury.

**CERTIFICATE OF COUNSEL**

Counsel of the Plaintiffs certifies as to all Defendants that a reasonable investigation as permitted by the circumstances was conducted to determine if there are grounds for a good faith belief that there was negligence in the care or treatment of the Plaintiff. It is further certified by the undersigned counsel that such reasonable investigation gave rise to good faith belief that grounds exist for an action against each named defendant herein.

s/ Gary W. Roberts
Gary W. Roberts, Esq.
Florida Bar No. 157837
Attorney for Plaintiffs
Gary Roberts & Associates, P.A.
1675 Palm Beach Lakes Boulevard, 7th Floor
West Palm Beach, FL 33401-2115
Telephone: (561) 686-1800
Fax: (561) 686-1533
Email: gary@palmbeachtrialattorney.net